May Term, 1855.

SNYDER
v.
THE PRESIDENT, &c., OF ROCKPORT.

---

SNYDER *v.* THE PRESIDENT AND TRUSTEES OF THE TOWN OF ROCKPORT.

6 237
145 574

6 237
154 508
155 244

6 237
162 404

6 237
163 608

The act of 1852 for the incorporation of towns, confers upon the corporate authorities plenary power in relation to the grading and improvement of streets, and is constitutional.

Where a street is graded in a careful manner, pursuant to legal authority, the owners of lots contiguous thereto, have no right to compensation for consequential damages to such lots, unless such damages are expressly given by statute, and, when thus given, compensation must be sought in the manner prescribed by the statute.

The act of 1852 for the incorporation of towns, does not empower the corporate authorities to construct wharves.

May Term,
1855.

Snyder
v.
The Presi-
dent, &c., of
Rockport.

Wednesday,
May 30.

But the corporate authorities of a town will not be restrained from grading a street, merely because, by such grading, a wharf will accidentally result.

The corporate authorities of a town, under the act of 1852, can not apply money raised for improving a street, to the construction of a wharf, except so far as such wharf may be a mere incident to the legitimate improvement of such street.

APPEAL from the *Spencer* Circuit Court.

PERKINS, J.—*Thomas J. Snyder* and several others, property-holders in the town of *Rockport*, *Spencer* county, *Indiana*, filed a bill praying an injunction upon the president and trustees of said town, restraining them from making a certain improvement which they had undertaken. The bill was dismissed below for want of equity.

The bill alleges, in substance, that the town of *Rockport* is situated upon the bank of the *Ohio* river, seventy-five feet above the water; that the main street of said town, ninety feet wide, extends from the river outward, descending somewhat as it extends; that the plaintiffs own the lots upon said street on the river bluff, and that the trustees of the town are about to have said main street graded, filling the end back from the river and cutting down the end upon the river, through the bluff of seventy-five feet, so as to open a communication, by said street, between the town and the river, and also furnish a landing for steamboats, &c., at its termination. The plaintiffs in the bill object to the proceeding, and pray the Court to arrest it by injunction for the following reasons:

1. That it will greatly injure their property.

2. That the corporation does not propose to pay them damages, and is utterly unable to make such payment, if it was even willing.

3. The project, if carried into effect, would be of no utility.

We extract from the bill.

"Your complainants are informed and believe that it is not the intention of the corporation to complete the entire work during the present year, but to go on with the work, from year to year, as they shall be able to collect taxes for that purpose. Your complainants further show that the

May Term,
1855.

SNYDER
v.
THE PRESI-
DENT, &c., OF
ROCKPORT.

proposed grading of main street by digging through that immense bluff and building the wharf at the place contemplated, is utterly impracticable and visionary, and, in the belief of your complainants, impossible, with the limited means at the command of this feeble corporation, the whole town interested in the work containing only about seven hundred inhabitants, already taxed to the extent of their ability to pay; that the water in front of the town, and at the proposed wharf, is shoal, and, during the season of low water, the landing is dangerous for steamboats, the bottom and shore of the river being composed of rocks and interspersed with large logs, many of them large and detached; that the proposed cut through the bluff, at the highest point, which is at or near the corner of main and front streets, for the purpose proposed, will be at least forty feet in depth, and that fifteen feet will be and is a solid sand rock, or nearly solid; and that the proposed grade and cut through the bluff, will be of no conceivable benefit, unless it is excavated deep enough for a wharf. It is pretended by the corporation, and those who are interested in destroying the property of complainants, that this grading is necessary to procure earth to fill up the lowest part of main street; but your complainants allege, and the corporation well know, that a sufficient quantity of earth for that purpose can be procured in other parts of the town, upon the same bluff, equally convenient, without injury to any one's rights of property."

Such are the facts of the case. We now inquire as to the law arising upon them.

The act for the incorporation of towns, 1 R. S. 1852, p. 482, by which *Rockport* is governed, in section 22, empowers the board of trustees thereof—"Ninth. To lay out, open, grade and otherwise improve the streets, alleys, sewers, sidewalks, and crossings, and keep them in repair, and to vacate the same." And by section 46 it provides that, "Whenever two-thirds of all the resident owners, in number or in value, of real estate bounding both sides of any street not less than one square, shall petition to have such street graded, paved, or otherwise improved, or the side-

May Term,
1855.

Snyder
v.
The Presi-
dent, &c., of
Rockport.

walks thereof built or repaired; or when two-thirds of the owners of real estate, in number or in value, on one side of such street, shall desire a sidewalk on that side, it shall be the duty of such board to levy, and cause to be collected, by tax upon the owners of real estate, or lots on such street or part of a street, according to the last assessed valuation of said real estate, such a sum of money as is necessary for the improvement of said street or sidewalk, as in said petition requested."

The bill does not pretend but that all the requirements of the statute have been complied with by the corporation in entering upon the proposed undertaking, and it is plain that the statute confers plenary power to perform it, so far as grading and improving the street is concerned, and that statute is constitutional. *The People* v. *The Mayor, &c., of Brooklyn*, 4 Comstock 419. We have, then, no question before us as to legality of corporate action, or the existence of corporate power touching the grading of the street, but only one as to expediency and manner of operation; but as to the wharf there is presented a question of power.

The questions of expediency and manner, as to grading streets, are certainly left in the first instance to the property-holders and the trustees, and it would only be in a case of palpable abuse, if then, that a Court would interfere. The law says, that when a certain number of property-holders, on, &c., shall petition, the trustees shall assess a tax upon, &c., to make the improvement. It is not made, it will be observed, at the expense of the town treasury, but the property-holders on the street; and it would seem that a Court should not undertake to determine for them, in opposition to their own judgments, their ability to accomplish what their convenience and public spirit might induce them to undertake, where the proceeding was fairly entered upon. We see nothing touching this point requiring judicial interference.

As to compensation for the injury which the grading of the street may work to the property of the plaintiffs, they are entitled to none on general principles of law. This is

well settled. If the trustees were proceeding in violation of law and negligently and wantonly prosecuting the work to their detriment, the case would be different; but where a street is graded pursuant to legal authority and in a careful manner, the adjoining owners of lots have no right to compensation for consequential damages to their lots, unless expressly given by statute, and, in that case, the compensation must be sought in the manner prescribed by the statute. So are almost all the authorities. We know of but one Court that has decided to the contrary, and that is the Supreme Court of *Ohio*, in *Akron* v. *McCombs*, 15 and 18 Ohio Reports, a decision which *Bronson*, C. J., in delivering the unanimous opinion of the Court of Appeals in *New-York*, in *Radcliff's Executors* v. *The Mayor*, &c., *of Brooklyn*, says "is entitled to no respect whatever," "and can not be law beyond the state of *Ohio*." 4 Comstock 195. This opinion, we may say, exhausts the subject and establishes the law, as above asserted, beyond cavil.

The construction of the wharf presents a different question. The law constituting the charter of the town of *Rockport* does not empower the corporation to construct a wharf. It can not therefore do it as a distinct, independent undertaking. Nevertheless, the corporation will not be restrained from grading main street simply because, if that street is graded, the river end of it will accidentally be a wharf. The corporation has the right to improve that street, to grade it down to the river, to dispose of the surplus earth, &c., and, if in doing all this in a manner pointed out by law, a wharf or steamboat landing results, we should suppose it perfectly legal and a peculiarly fortunate incident to the town.

But the town trustees have no right to use the money raised for improving the street for the construction of a wharf, further than the latter may be a mere incident to the legitimate improvement of the former, and so far as they are doing so, if indeed they are to any extent, should be restrained. And because the case made by the bill renders it probable that they may be so doing to some extent, the decree below is reversed.

*May Term, 1855.*

SNYDER
v.
THE PRESIDENT, &c., OF ROCKPORT.

May Term, 1855.

*Per Curiam.*—The decree is reversed with costs. Cause remanded for an answer, and for further proceedings in accordance with this opinion.

*A. L. Robinson*, for the appellant.

*L. Q. DeBruler* and *J. Pitcher*, for the appellees.