DAVID NEHR v. STATE OF NEBRASKA.

[FILED NOVEMBER 10, 1892.]

1. **Property in Dogs.** In this state a dog has a money value which the owner may recover from one who wrongfully and unlawfully kills his dog.

2. **Dogs: COLLAR.** It is the duty of the owner to place upon the neck of his dog "a good and sufficient collar with a metallic plate thereon, on which shall be plainly inscribed the name of the owner." If a dog is found running at large without such collar, no action can be maintained for killing the dog.

3. ———: RUNNING AT LARGE. When a dog leaves the owner's premises or goes upon the public road, no one having control of him being near, he is running at large within the meaning of the statute.

4. ———: NUISANCE. A dog that persistently assails people passing along a public road in a threatening manner is a nuisance, and may be killed by any person so assailed.

ERROR to the district court for Gage county. Tried below before BABCOCK, J.

*Hardy & Wasson,* for plaintiff in error:

It is lawful for a person to kill any dog found running at large, on whose neck there is no collar, and no action can be maintained for such killing. (Sec. 191, Consolidated Statutes.) The dog was unconfined and unrestrained, and was therefore "running at large." (*Commonwealth v. Dow,* 10 Met. [Mass.], 382; *Woolf v. Chalker,* 31 Conn., 121; *McAneany v. Jewett,* 10 Allen [Mass.], 151.) A dangerous and unruly dog running at large is a nuisance, and the killing of such an animal is justifiable. (*Putnam v. Payne,* 13 Johns. [N. Y.], 312; *Maxwell v. Palmerton,* 21 Wend. [N. Y.], 408.) The dog was of no intrinsic value, and was not such personal property as made it a crime to kill him. (*United States v. Gideon,* 1 Minn., 226; *Jemison v. S. W. R. Co.,* 75 Ga., 444; *State v. Marshall,* 13 Tex., 55.)

*George H. Hastings, Attorney General, contra:*

Dogs are personal property within the meaning of the statute. (*Hinckley v. Emerson,* 4 Cow. [N. Y.], 351; *Parker v. Mise,* 27 Ala., 481; *Wheatley v. Harris,* 4 Sneed [Tenn.], 468; *Harrington v. Miles,* 11 Kan., 480; *Dunlap v. Snyder,* 17 Barb. [N. Y.], 561; *Brent v. Kimball,* 60 Ill., 211; *Uhlein v. Cromack,* 109 Mass., 273.)

MAXWELL, CH. J.

The plaintiff in error was informed against in the county court of Gage county because he did unlawfully, maliciously, and willfully shoot and kill a certain house dog, the property of John A. Dobbs, of the value of $50. He was found guilty in the county court and appealed to the district court, where he was again found guilty, and the jury also found that the dog was of the value of $1; and the plaintiff in error was sentenced to five days' imprisonment in the county jail and to pay a fine of $2 and the costs.

The prosecution was instituted under section 109 of the

Criminal Code, which is as follows : " If any person shall willfully and maliciously injure or destroy to any amount less than one hundred dollars, any personal property of any description whatsoever, or any building or other structure of any kind, owned by another person, every person so offending shall be imprisoned in the jail of the proper county not exceeding thirty days, and shall, moreover, be fined in double the amount of the damage of the property injured or destroyed."

Section 191, Consolidated Statutes, provides: " It shall be the duty of every owner or owners of any dog or dogs to securely place upon the neck of such dog or dogs a good and sufficient collar with a metallic plate thereon, on which shall be plainly inscribed the name of such owner. It shall be lawful for any person to kill any dog found running at large, on whose neck there is no collar, as aforesaid, and no action shall be maintained for such killing.

" Sec. 192. Every person who shall harbor about his or her premises a collarless dog for the space of ten days shall be taken and held as the owner, and shall be liable for all damages which such dog shall commit.

" Sec. 193. The owner or owners of any dog or dogs who shall permit the same to run at large for ten days after this act shall take effect, without such collar as hereinbefore described being securely placed upon the neck of such dog or dogs, shall be deemed guilty of a misdemeanor and fined in any sum not exceeding twenty-five dollars, which, when collected, shall be paid to the county treasury for the benefit of the school fund of the county in which the fine was imposed."

The testimony shows that Mr. Dobbs's house was about 100 feet from the public road; that there was no fence between the house and the road; that the dog was in the habit of running out on the road when persons or teams were passing, and barking furiously; that he had run out in a belligerent manner nearly every time that the plaintiff

in error had passed along the road and at one time had frightened his team when his wife was driving. Other witnesses testify that their horses had been frightened by the dog. All the witnesses agree that the dog was in the habit of going on the road and barking in a threatening manner at teams or persons as they passed.

Jacob Dell, a witness called by the defendant, testified:

Q. Did you know John Dobbs's dog?

A. Yes, sir.

Q. The one that was shot?

A. Yes, sir.

Q. Tell what you know about his attacking you going by there.

A. Well, when I came past with a team he nearly always came out in a vicious, severe manner, just as though he intended to eat something up if he could get hold of it; first, my team isn't easily scared; he didn't scare the team very much; he always tackled me when I went by on foot, he came out very savagely; he came out within three or four feet of me; I knew the dog was going to bite me; I turned around and kicked at him; he barked and growled; he is as cross as any dog I had to encounter; he followed me three or four rods and then he turned back.

Q. Did he put you in fear?

\*       \*       \*       \*       \*       \*       \*

Q. State what effect this attack had upon you and your mind, at this particular time; I allude to the time of the attack.

A. I don't know that it had any effect, only that it scared me.

Q. What were you scared about?

A. I was afraid he was going to bite me.

Other witnesses testify to substantially the same facts.

The testimony also shows that the dog came out on the road when the plaintiff in error was passing that place and commenced barking in a hostile manner, whereupon the plaintiff in error shot and killed the dog.

44

The first objection is, that a dog has no value, and therefore a prosecution will not lie under the statute in question. We think differently, however. A dog is property and no one can destroy it maliciously without making himself liable. (*Harrington v. Miles*, 11 Kan., 480; *Hinckley v. Emerson*, 4 Cow. [N. Y.], 351; *Uhlein v. Cromack*, 109 Mass., 273; *Brent v. Kimball*, 60 Ill., 211.) The first objection, therefore, is untenable.

Second—The design of the statute is that all dogs shall wear collars, so that it shall be known who the owners are. If a dog is found on the public road without a collar and away from his owner or the person having charge of him, the statute in effect authorizes the destruction of the dog.

But it is said the dog was not running at large when he was killed. The words "running at large," in the connection in which they are used, mean running on the public road or off from the owner's premises without any person claiming an interest in the dog being near at hand.

In *Commonwealth v. Dow*, 10 Met. [Mass.], 382, it was held that a dog is going at large in a town if he is loose and following the person who has charge of him at such a distance that he cannot exercise control over the dog.

In *McAneany v. Jewett*, 10 Allen [Mass.], 151, the dog was on the owner's premises, disturbing no one when the defendant entered thereon and shot the dog, and it was held that the dog was not at large.

In *Loomis v. Terry*, 17 Wend. [N. Y.], 496, it was held that if a person permit a mischievous dog to run at large on his premises and a person is bitten by him in the daytime the owner will be liable for the damages, although the person injured was trespassing on the ground of the owner at the time. It is made the duty of the owner to put a collar on his dog, so that his ownership may be known. If he fails to do so and the dog is killed, off from the owner's premises, there can be no recovery.

Third—The testimony would warrant the jury in find-

ing that the dog was in the constant habit of attacking people passing along the public road and therefore was a nuisance, and justified any person assaulted in killing him.

An attempt was made to show that other dogs attacked people in passing along the roads. Even if proved, it would not aid this case. (*Maxwell v. Palmerton*, 21 Wend. [N. Y.], 408.) In the case cited Chief Justice Nelson says: "If a dog be in fact ferocious, at large, and a terror to the neighborhood, the public would be justified in dispatching him at once." The same statement had previously been made in *Putnam v. Payne*, 13 Johns. [N. Y.], 312, and is no doubt the law.

No person has a right to keep a dog that persistently assails travelers passing peaceably along the public road, and the fact that many persons permit their dogs to do so does not justify the practice. In any view of the case, therefore, the judgment cannot be sustained. The judgment is reversed and the cause remanded to the district court for further proceedings.

REVERSED AND REMANDED.

THE other judges concur.