WALKER ET AL. v. TOWLE.

[No. 18,728.   Filed Jan. 4, 1901.   Rehearing denied June 7, 1901.]

MUNICIPAL CORPORATIONS.—*Health.—Dogs Running at Large.—Nuisance.*—Under the provisions of §§3541, 3615, 3616 Burns 1894, common councils of cities have power to enact ordinances for the protection of life, health, and property, and, having such powers, may pass ordinances requiring owners of dogs to muzzle the same, or keep them upon their own premises, and directing the marshal to kill all dogs found running at large in violation of such ordinance, and if such officer kills a dog running at large in violation of such ordinance, no action can be sustained against him for such act. *pp. 641, 642.*

CONSTITUTIONAL LAW.—*Delegation of Powers.—Municipal Corporations.—Ordinances.—Health.—Dogs Running at Large.—Nuisance.*—An ordinance authorizing the mayor of a city whenever he may apprehend danger of the existence or spread of hydrophobia to issue a proclamation requiring all owners of dogs to confine or muzzle such animals is not invalid as delegating legislative powers to an executive officer. *pp. 642-647.*

ANIMALS.—*Runabout Dogs.*—In an action against a city officer for damages for killing a dog, an answer alleging that the dog when killed was roaming about the streets unattended by its owner was a sufficient defense thereto under §2857 Burns 1894. *p. 647.*

From the Porter Circuit Court.   *Reversed.*

*Peter Crumpacker,* for appellants.

*A. F. Knotts,* for appellee.

MONKS, J.—Appellee brought this action against appellants to recover damages for killing appellee's dog. A hearing by jury resulted in a verdict, and, over a motion for a new trial, judgment in favor of appellee.

It is assigned for error that the court erred in sustaining appellee's demurrer to appellants' second paragraph of answer. Said second paragraph of answer is, in substance, that the city of Hammond, on a public street of which appellee's dog was killed, is and was a duly incorporated city in this State. That appellants, Mott and Walker, were, at the time Walker shot said dog, the mayor and marshal

respectively of said city. That at the time of the killing of said dog there was in full force and effect an ordinance in said city as follows: "§1. Be it ordained by the common council of the city of Hammond that whenever the mayor of said city may apprehend that there is danger of the existence or spread of hydrophobia within or near said city, he shall issue a proclamation ordering and requiring all persons owning, possessing, or harboring, or having the care of any animal of the dog kind within the limits of said city, either to confine or muzzle such animal for a term not less than thirty nor more than ninety days ensuing the date of such proclamation, and upon the issuing of such proclamation it shall be the duty of all persons owning, possessing, or harboring, or having the care of any animal of the dog kind during the time mentioned in such proclamation to confine such animal securely within some house or structure or to some substantial fastening upon his or their premises, so as to prevent such animal from biting or being bitten by other animals, or to cause such animals to be securely and effectually muzzled; and no muzzle shall be deemed sufficient unless it be of such form and strength and so attached and fastened as will effectually prevent any such animal from biting. During the time mentioned in such proclamation any animal of the dog kind which may be found running at large within the city without being muzzled is hereby declared to be a nuisance. Any person failing to comply with the provisions of this section shall be fined in any sum not less than $3 nor more than $25.

"§2. Upon the issuing of any such proclamation by the mayor in pursuance of the preceding section of this ordinance, it shall be the duty of the marshal and policemen, respectively, to kill any animal of the dog kind found running at large within the city during the time mentioned in such proclamation, without being securely muzzled as required by this ordinance. And it shall be lawful for any person or persons to kill any and all such unmuzzled dogs during such time."

It was further alleged in said paragraph that appellant Mott, acting as mayor of said city, apprehended that there was danger of the existence and spread of hydrophobia within and near said city, and did then and there, on the 19th day of June, 1895, issue his proclamation ordering all persons to confine or muzzle their dogs from June 21, 1895, to September 1, 1895, pursuant to the terms of said ordinance. That the dog when killed was within the city limits and was found then and there running at large upon the public highways, and was not then and there muzzled, and was unprovided with any means whatsoever to prevent him from biting, and was then and there roaming about over the country unattended by its owner or any agent of its owner. That appellant Walker, being then and there the marshal of said city, and finding said dog, under said circumstances, shot and killed said dog as he lawfully might. Copies of said ordinance and proclamation are set out in said paragraph. It is insisted by appellee that said ordinance is invalid, because the common council had no power to pass an ordinance providing for the killing of dogs.

Municipal corporations possess and can only exercise such powers as are granted by the legislature in express words, and those necessarily or fairly implied or incident to the powers expressly granted, and those essential to the declared objects and purposes of the corporation. No incidental powers can be implied except such as are essential to the accomplishment of the purposes of their creation and for their continued existence. *Pittsburgh, etc., R. Co.* v. *Town of Crown Point,* 146 Ind. 421, 422, and authorities cited. Under the provisions of §§3541, 3615, 3616 Burns 1894, §§3106, 3154, 3155 Horner 1897, the common council of a city has the power to enact ordinances for the protection of life, health, and property. These are among the purposes and objects of the creation of such corporations. It is true that the power to declare what shall constitute a nuisance is

not granted in express words, but the exercise of such power is essential to the powers granted in express words, and also essential to the objects and purposes of the creation of such municipal corporations. It is evident, therefore, that cities incorporated under said act have the power to declare by ordinances what shall constitute a nuisance, and prevent, abate, and remove the same, and enact ordinances for the preservation of the public health, and to carry out and enforce all sanitary regulations. *Baumgartner* v. *Hasty,* 100 Ind. 575, 50 Am. Rep. 830. A city is not, however, authorized to declare that to be a nuisance which is not so in fact. *City of Evansville* v. *Miller,* 146 Ind. 613.

It is settled in this State that municipal corporations having such powers may pass ordinances requiring owners of dogs securely to muzzle the same, or keep them upon their own premises, and directing the marshal to kill all dogs found running at large in violation of such ordinance, and that if such officer kills a dog running at large, in violation of such ordinance, no action can be sustained against him for such act. *Haller* v. *Sheridan,* 27 Ind. 494. See, also, 2 Tiedeman on State and Fed. Control 839-847; Ingham's Law of Animals, pp. 141, 142; 18 Am. & Eng. Ency. of Law 755; *Lowell* v. *Gathright,* 97 Ind. 313; *Blair* v. *Forehand,* 100 Mass. 136, 97 Am. Dec. 82, 1 Am. Rep. 94; *Tower* v. *Tower,* 18 Pick. 262; *State* v. *City of Topeka,* 36 Kan. 76, 12 Pac. 310, 59 Am. Rep. 529; *Morey* v. *Brown,* 42 N. H. 373; *Cranston* v. *Mayor,* 61 Ga. 572, 28 Am. Law Review, 621; *Mayor* v. *Witmer,* 86 Md. 293, 37 Atl. 965; *Nehr* v. *State,* 35 Neb. 638, 53 N. W. 589, 17 L. R. A. 771; *Hubbard* v. *Preston,* 90 Mich. 221, 51 N. W. 209, 15 L. R. A. 249, and notes; *Jenkins* v. *Ballantyne,* 8 Utah 245, 30 Pac. 760, 16 L. R. A. 689; *Leach* v. *Elwood,* 8 Ill. App. 453; *Julienne* v. *Jackson,* 69 Miss. 34, 10 South. 43.

It is next insisted that said ordinance is invalid because it attempts to delegate legislative powers to an executive or administrative officer.

*In re Kallock,* 165 U. S. 526, 17 Sup. Ct. 444, 41 L. Ed. 813, it was held that the provisions of the act of congress of August 2, 1886, defining butter and imposing a tax upon the manufacture, etc., of oleomargarine (24 Stat. 209 ch. 840), that the marks, brands, and stamps required by the act to be placed on packages of oleomargarine, and the omission of which is made by the act a criminal offense, shall be designated by the commissioner of internal revenue, involve no unconstitutional delegation of power to determine what shall be criminal, since the criminal offense is fully and completely defined by the act, and the designation of the marks, brands, and stamps is merely the discharge of administrative functions needful to the operation of the machinery of the law.

In *United States* v. *Ormsbee* (S. C.), 74 Fed. 207, it was held that the act of congress of August 8, 1894, granting to the secretary of the navy authority to prescribe such rules and regulations for the use, administration, and navigation of canals, etc., owned and operated by the United States, as in his judgment public necessity may require, was not invalid as a delegation of legislative power; and the rules made pursuant thereto have the force of law, so that persons violating the same by drawing off water from a canal are subject to criminal punishment under the provisions of said act. It was said by the court in said case, p. 209, "The legislature cannot delegate its power to make the laws, but it can make a law to delegate the power to determine some fact or state of things upon which the law makes or intends to make its own action depend."

In *People* v. *Kipley,* 167 Ill. 638, 49 N. E. 229, it was held that an act known as the civil service act which empowered the civil service commissioners to promulgate rules, and provided that any person who should violate any of said rules should be punished by fine or by imprisonment in the county jail, did not delegate legislative powers to said commissioners by authorizing them to make such rules.

The same doctrine was declared by this court in *Blue* v. *Beach,* 155 Ind. 121.

It was insisted in *Field* v. *Clark,* 143 U. S. 649, 12 Sup. Ct. 495, 36 L. Ed. 294, that section three of the tariff act of 1890, known as the reciprocity section of the McKinley tariff act, was unconstitutional for the reason that it delegated legislative powers to the president. The part of said section against which said objection was urged is as follows: "§3. That with a view to secure reciprocal trade with countries producing the following articles, and for this purpose, on and after the 1st day of January, 1892, whenever, and so often as the President shall be satisfied that the government of any country producing and exporting sugars, molasses, coffee, tea and hides, raw and uncured, or any of such articles, imposes duties or other exactions upon the agricultural or other products of the United States, which in view of the free introduction of such sugar, molasses, coffee, tea and hides into the United States he may deem to be reciprocally unequal and unreasonable, he shall have the power and it shall be his duty to suspend, by proclamation to that effect, the provisions of this act relating to the free introduction of such sugar, molasses, coffee, tea and hides, the production of such country, for such time he shall deem just, and in such case and during such suspension duties shall be levied, collected and paid upon sugar, molasses, coffee, tea and hides, the product of or exported from such designated country as follows, namely:" The court in that case, after quoting at length from the authorities sustaining such legislation, and citing a number of acts of congress, conferring like powers upon the president, said: "That Congress cannot delegate legislative power to the President is a principle universally recognized as vital to the integrity and maintenance of the system of government ordained by the Constitution. The act of October 1, 1890, in the particular under consideration, is not inconsistent with that principle. It does not, in any real sense, invest the Presi-

Walker v. Towle.

dent with the power of legislation. For the purpose of se-
curing reciprocal trade with countries producing and ex-
porting sugar, molasses, coffee, tea and hides, Congress it-
self determined that the provisions of the act of October 1,
1890, permitting the free introduction of such articles,
should be suspended as to any country producing and ex-
porting them, that imposed exactions and duties on the agri-
cultural and other products of the United States, which the
President deemed, that is, which he found to be, reciprocally
unequal and unreasonable. Congress itself prescribed, in
advance, the duties to be levied, collected and paid, on
sugar, molasses, coffee, tea or hides, produced by or exported
from such designated country, while the suspension lasted.
Nothing involving the expediency or the just operation of
such legislation was left to the determination of the Presi-
dent. The words, 'he may deem', in the third section, of
course, implied that the President would examine the com-
mercial regulations of other countries producing and ex-
porting sugar, molasses, coffee, tea and hides, and form a
judgment as to whether they were reciprocally equal and
reasonable, or the contrary, in their effect upon American
products. But when he ascertained the fact that duties and
exactions, reciprocally unequal and unreasonable, were im-
posed upon the agricultural and other products of the
United States by a country producing and exporting sugar,
molasses, coffee, tea or hides, it became his duty to issue a
proclamation declaring the suspension, as to that country,
which Congress had determined should occur. He had no
discretion in the premises except in respect to the duration
of the suspension so ordered. But that related only to the
enforcement of the policy established by Congress. As the
suspension was absolutely required when the President as-
certained the existence of a particular fact, it cannot be said
that in ascertaining that fact and in issuing his proclama-
tion, in obedience to the legislative will, he exercised the
function of making laws. Legislative power was exercised

when Congress declared that the suspension should take effect upon a named contingency. What the President was required to do was simply in execution of that act of Congress. It was not the making of law. He was the mere agent of the law-making department to ascertain and declare the event upon which its expressed will was to take effect. It was a part of the law itself as it left the hands of Congress that the provisions, full and complete in themselves, permitting the free introduction of sugars, molasses, coffee, tea and hides, from particular countries, should be suspended, in a given contingency, and that in case of such suspensions certain duties should be imposed. 'The true distinction,' as Judge Ranney speaking for the Supreme Court of Ohio has well said, 'is between the delegation of power to make the law, which necessarily involves a discretion as to what it shall be, and conferring authority or discretion as to its execution, to be exercised under and in pursuance of the law. The first cannot be done; to the latter no valid objection can be made.' *Cincinnati, etc., R. Co.* v. *Commissioners,* 1 Ohio St. 77, 88. In *Moers* v. *City of Reading,* 21 Pa. St. 188, 202, the language of the court was: 'Half the statutes on our books are in the alternative, depending on the discretion of some person or persons to whom is confided the duty of determining whether the proper occasion exists for executing them. But it cannot be said that the exercise of such discretion is the making of the law.' So, in *Locke's Appeal,* 72 Pa. St. 491, 498: 'To assert that a law is less than a law, because it is made to depend on a future event or act, is to rob the legislature of the power to act wisely for the public welfare whenever a law is passed relating to a state of affairs not yet developed, or to things future and impossible to fully know.' The proper distinction the court said was this: 'The legislature cannot delegate its power to make a law; but it can make a law to delegate a power to determine some fact or state of things upon which the law makes, or intends to make, its own action depend. To

Walker v. Towle.

deny this would be to stop the wheels of government. There are many things upon which wise and useful legislation must depend which cannot be known to the law-making power, and, must, therefore, be a subject of inquiry and determination outside of the halls of legislation.' "

What is said by the court in *Fields* v. *Clark,* 143 U. S. 649, is applicable to the objections urged to said ordinance, and fully answers all the objections urged against the same by appellee, and is decisive of the case at bar. Under the provisions of said ordinance it was the duty of the mayor to ascertain whether or not there was danger of the existence or spread of hydrophobia in or near said city, and if he found there was such danger it was his imperative duty to issue the proclamation provided for, stating the time during which said ordinance would be enforceable, not less than thirty nor more than ninety days. When such proclamation was issued, it was in obedience to the command of the ordinance. In obeying the command of said ordinance the mayor did not exercise legislative power. He only declared the period during which the same should be enforced, as provided by the lawmaking power of the city, and in so doing he was the agent of that body. Said ordinance was enforceable after said proclamation for the term fixed within the limits named, according to its own provisions. *State, ex rel.,* v. *Hauser,* 63 Ind. 155, and *Evansville, etc., R. Co.* v. *City of Evansville,* 15 Ind. 395, cited by appellee, are not, therefore, in conflict with what we decide in this case.

The allegations of said paragraph of answer were also sufficient to justify the killing of said dog, under §2857 Burns 1894 (Acts 1891, p. 453), the substance of which was reenacted in 1897 (Acts 1897, p. 178), §2864a Burns Supp. 1897. It follows that the court erred in sustaining the demurrer to the second paragraph of appellant's answer.

Judgment reversed, with instructions to overrule the demurrer to the second paragraph of answer, and for further proceedings not inconsistent with this opinion.