FREIGY *v.* GARGARO COMPANY, INC.

[No. 28,065. Filed April 5, 1945. Rehearing denied May 11, 1945.]

*Eggeman, Reed & Cleland,* of Fort Wayne, for appellant.

*Barrett, Barrett & McNagny,* of Fort Wayne, for appellee.

RICHMAN, J.—This is an action by appellant for breach of a contract to which she was not a party but which she claims was made for her benefit. The court sustained a demurrer to her complaint. She refused to plead over, suffered judgment that she take nothing and appealed, assigning as error the ruling on the demurrer.

The contract, which had been fully executed by the parties, was between the City of Fort Wayne and appellee for the construction of a trunk sewer 12 to 15 feet in diameter 60 feet beneath the surface of a paved street upon which appellant's lot abutted. Damages are sought for injuries to appellant's frame building alleged to have been caused by the settling of the foundation, support of which was weakened by drainage of the water table in the subsoil beneath the street. The vibration of heavy machinery used in digging a shaft 60 feet deep in the street in front of the house is alleged as a contributing cause.

The complaint avers that before the contract was executed the city and appellee from soil tests knew the nature of the subsoil and knew

"that if said sewer were constructed in accordance with said plans and specifications, of necessity the

water would be drained from and withdrawn from the sub-soil supporting plaintiff's building and would destroy and deprive the plaintiff of the normal and natural lateral support thereof; and that with full knowledge of the inherent dangerous nature of said work and the probability of damage which would arise, by reason thereof, inserted in said contract said provision, covenants and agreements to pay any damages which would accrue or arise from said construction work, whether or not incidental or due to negligence."

Article VI of the contract reads:

"The Contractor covenants and agrees to pay all damages for injury to real or personal property, or for any injury or death sustained by any person growing out of any act or deed of the Contractor, or of his employees, or of any of his subcontractors or their employees. The Contractor hereby agrees to indemnify and save the City of Fort Wayne harmless against all suits and actions of every name and description brought against the City of Fort Wayne, for, or on account of any *such* (our emphasis) injuries to real or personal property, or injuries received or death sustained by any person or persons, caused by said Contractor, his servants, agents or employees, subcontractors or their employees, in the execution of said work; or by or in consequence of any negligence in guarding the same; or by or on account of any omission or act of the Contractor, his agents or employees; and the said Contractor further agrees that so much of the money due him under and by virtue of this contract as shall be considered necessary by the Board of Public Works of the City of Fort Wayne to protect itself against loss [shall be retained] until such suit or claim for damages shall have been settled, and evidence to that effect shall have been furnished to the satisfaction of the said Board of Public Works."

The bracketed words evidently were inadvertently omitted in copying. Appellant attaches no significance

to the clause in which they appear. Appellee treats it as if they were present and we shall do likewise.

It is not alleged that the plans and specifications of the sewer were negligently drawn nor that the injury was the result of any negligent act or omission in the course of its construction. Rather it is contended that the contract is in the nature of insurance against incidental or consequential damages for which otherwise appellant would have no remedy.

Public work resulting in withdrawal of lateral support does not constitute a taking within our constitutional provision that "No man's property shall be taken by law, without just compensation . . . ." Art. 1, § 21, Ind. Const.; *City of Lafayette* v. *Spencer* (1860), 14 Ind. 399; *Macy* v. *City of Indianapolis* (1861), 17 Ind. 267; *Cummins* v. *City of Seymour* (1881), 79 Ind. 491; *City of Valparaiso* v. *Hagen* (1899), 153 Ind. 337, 54 N. E. 1062; *Morris* v. *City of Indianapolis* (1911), 177 Ind. 369, 94 N. E. 705; *Brown* v. *State* (1937), 211 Ind. 61, 5 N. E. (2d) 527; *Johnson* v. *City of St. Louis* (1909), CCA 8th, 172 F. 31; *Crane* v. *City of Harrison* (1925), 34 Ida. 167, 232 P. 578, 38 A. L. R. 15. As said in *Brown* v. *State,* this is settled in Indiana, although in other states and under varying constitutional provisions the rule is otherwise. See notes 7 A. L. R. 806, 38 A. L. R. 19 and 44 A. L. R. 1494.

As a corollary to this rule, in the absence of negligence in planning or constructing the public work resulting in withdrawal of lateral support, the abutting owner has no remedy since the injury is classed as *damnum absque injuria.* This principle is of ancient origin. *Governor, etc. of Cast Plate Manufacturers* v. *Meredith* (1792), 4 Durnford & East 794; *Wilson* v. *Mayor &c., of New York* (1845), 1 Denio 595; *Radcliff's Executors* v. *Mayor, &c. of Brooklyn* (1850),

4 Comstock 195; *Smith* v. *Corporation of Washington* (1857), 20 Howard (U.S.) 135; *Snyder* v. *The President, &c. of Rockport* (1855), 6 Ind. 237; *Macy* v. *The City of Indianapolis* (1861), *supra; Rice* v. *City of Evansville* (1886), 108 Ind. 7, 9 N. E. 139; *Morris* v. *City of Indianapolis, supra.* Recognized in some of these cases, among them *Snyder* v. *The President, &c. of Rockport, supra,* is the power by statute to provide a remedy but we are cited to no such Indiana legislation.

The contract before us must be deemed to have been executed with knowledge of the law as above stated. But the contractual provisions are not necessarily limited or controlled by these principles, for frequently the purpose of a contract is to give rights or relief not otherwise existing. Appellant contends that it was so in this case. The first sentence of Article VI seems to sustain the contention. Unless some word or words therein are ambiguous or considered in their context require a different interpretation, appellant is within the class of those whose real property might be injured by an act or deed of the contractor or his subordinates in carrying out the contract, and, though unnamed therein, may recover as a third party beneficiary if she can prove the causal connection.

In *E. I. DuPont De Nemours & Co.* v. *Ferguson* (1927), 86 Ind. App. 429, 158 N. E. 488, it is said:

"That a promise of one person to another for the benefit of a third may be enforced by the person for whose benefit it was made is not questioned by appellee, nor can it be; but it must clearly appear from the terms of the contract that it was the intention of the contracting parties to impose the obligation in favor of the party claiming the right to sue. *Reed* v. *Adams, etc., Wire Works* (1914), 57 Ind. App. 259, 106 N. E. 882; *Rawlings* v. *Vreeland* (1920), 76 Ind. App. 209, 127 N. E. 786;

*Irwin's Bank* v. *Fletcher, etc., Trust Co., Rec.*
(1924), 195 Ind. 669, 692, 145 N. E. 869."

The words "clearly appear" are traceable to the Reed case and were later used in the Irwin's Bank case of which we recently said in *Nash Engineering Co.* v. *Marcy Realty Corp.* (1944), 222 Ind. 396, 416, 54 N. E. (2d) 263, 271:

> "We do not understand that the intention of the parties as to third party beneficiaries is to be tested by any stricter or different rule than their intention as to other terms of the contract."

In *Carson Pirie Scott and Co.* v. *Parrett et al., Exrs.* (1931), 346 Ill. 252, 178 N. E. 498, 81 A. L. R. 1262, the court used slightly different and, we think, more accurate language:

> "The rule is that the right of a third party benefited by a contract to sue thereon rests upon the liability of the promisor, and this liability must affirmatively appear from the language of the instrument when properly interpreted and construed. The liability so appearing cannot be extended or enlarged on the ground alone that the situation and circumstances of the parties justify or demand further or other liability."

The controversy centers in the first sentence of Article VI. Appellee insists that the word "damages" therein was used in the legal sense as defined by Webster of "compensation or satisfaction imposed by law for a wrong or injury caused by violation of a legal right" and, therefore, supplies by implication the intent that only for negligent acts of the contractor or his subordinates was he to became liable. Cited to this effect is *Jones, Rec.* v. *Lathrop-Moyer Co.* (1934), 99 Ind. App. 127, 190 N. E. 883, wherein is a quotation from *Randall* v. *Hazelton* (1866), 94 Mass. (12 Allen), 412,

415, in substantially the same language as that of Webster. See also Rawles' 3rd Revision of Bouvier's Law Dictionary, Title "Damages," and *The City of North Vernon* v. *Voegler* (1885), 103 Ind. 314, 2 N. E. 821. This view assumes either that the word has no other meaning or that the context shows that this was the sense in which it was used.

But Webster also defines "damages" as: "The estimated reparation in money for detriment or injury sustained." This does not imply a wrongful or illegal act. Nor does the synonym "injuries" also given by Webster. Obviously we can rule out the latter by substituting it in the sentence as follows: "pay all *injuries* for injury to real or personal property." But the other definition is not so easily discarded. Detriment or injury may result from a lawful act or from an act or omission free from negligence. Appellee's argument fails if "damages" was used in the sense of reparation for such a detriment or injury.

It is not safe to isolate a word and ascribe to it a meaning independent of the context. Searching the remainder of Article VI we find a phrase that seems at variance with appellee's theory, namely, "or by or in consequence of any negligence in guarding the same." The presence of the word "negligence" in this phrase serves to emphasize its absence in every other part of the article. It seems to exclude the intent that the acts and deeds referred to should be only such as are negligent. That intent is also negatived by the adjective "any" modifying "act or deed." "Any" is a comprehensive word. *Haworth* v. *Hubbard* (1942), 220 Ind. 611, 44 N. E. (2d) 967, 144 A. L. R. 887. It is not restricted by the qualifying adjective "negligent" which could and would, we think, have been

inserted if it was the intention to limit appellee's liability to the consequences of negligent acts.

It is significant also that in the first sentence the word "omission" is not used, although in the second it appears in the phrase "or by or on account of any omission or act of the Contractor etc." If the contract was written with meticulous regard to legal terminology, we should expect to find the words "act" and "omission" coupled wherever there is to be an implication of negligence, because omission or failure to act is a premise upon which much of the law of negligence is based.

In *Nash Engineering Co.* v. *Marcy Realty Corp.* (1944), 222 Ind. 396, 419, 54 N. E. (2d) 263, 272, it was said:

> "We are not dealing with language of a constitution or a statute. These are assumed to be written with great care that not a word be meaningless. Not so are many contracts . . ."

There we held that a certain phrase was surplusage. Here we need not go that far. Breach of a contract gives rise to damages. The act or omission constituting the breach usually is neither unlawful nor negligent. In counting upon the breach damages are asked. The amount awarded is reparation, recompense or compensation for the loss suffered. Apart from contracts lawyers and judges frequently use the word "damages" in the sense of compensation. Such definition fits into this controverted sentence. That advocated by appellee does not.

A possible explanation of the broad scope of the contract is that the author, in his zeal to protect the city, expanded his language beyond the necessity for such protection without conscious thought that he was creating a liability available to a third party beneficiary.

But appellee cannot take advantage thereof. It had ample time to appraise itself of the legal effect of the language before the obligation was incurred. The form of the contract was presented with the plans and specifications to all bidders. Appellee's corporate officers or attorney, if one was consulted, were not entitled to rely upon the author's thought, even if it were known, for the liability of the parties must be based upon what he said, not what he thought he was saying. His language states in substance that appellee will pay reparation in money for the injury to appellant's property caused by construction of the sewer. Appellee accepted and assumed that obligation. Finding no ambiguity resort to further rules of construction is unnecessary.

Appellee also contends that Article VI, read as a whole, merely provides indemnity to the city. There are two kinds of indemnity, one against liability and the other against loss or damage. See 27 Am. Jur. *Indemnity*, § 20, wherein it is said:

> "It has been generally observed that a contract which simply indemnifies, and nothing more, is against loss or damage only, whereas a contract which binds the indemnitor to pay certain sums of money or perform other acts which will prevent harm or injury to the indemnitee is one of indemnity against liability."

The first portion of the second sentence of Article VI is clearly indemnity against loss. The second part of this sentence contains the additional protection to the city of the retention of so much of the contract price as the Board of Public Works may deem necessary until suits or claims have been settled. There is no legal inhibition against contracting for more than one kind of protection.

A covenant to pay damages is not identical with a covenant to save harmless the other contracting party

from such damages. The former is an assumption of liability. If this sentence is to be treated as indemnity, the fact that the succeeding sentence indemnifies against loss, requires, to avoid redundancy, that the first be construed as indemnity against liability. But indemnity against what liability? A party may not contract against his own negligence. 31 C. J. p. 433, n. 22. So by this covenant the city could not cast upon the contractor the burden of answering for loss due to negligent planning. Apart from such negligence damages were not recoverable against the city. See *supra.* The contractor was already answerable at law for the negligence of himself and (under the doctrine of *respondeat superior*) his servants. No covenant was needed to put that burden upon him. The acts of the contractor and subcontractors or their employees, performed without negligence, imposed no liability upon any one. It cannot be assumed that the parties were contracting with respect to wilful injuries. There remain only the negligent acts or omissions of subcontractors and their employees which under any reasonable hypothesis could be the subject of any indemnity against liability. The city might require the contractor to assume liability for such negligence. But if this was the purpose of the first sentence why so many unnecessary words? Why not more appropriate language?

Even if it were an indemnifying agreement it could also be treated as a contract for the benefit of third persons. This view was expressed in the similar case of *La Mourea* v. *Rhude* (1940), 209 Minn. 53, 295 N. W. 304, as follows:

"The city exacted from the defendants a promise that they should be 'liable for any damages done to . . . private property' in connection with the

work. It is immaterial that the obligation was also in effect one to indemnify the city against claims for such damage."

We are not persuaded by the eight cases upon which appellee relies that this is solely an indemnity contract. *Trustees Depauw Church* v. *New Albany Water Works* (1923), 193 Ind. 368, 140 N. E. 540; *Irwin's Bank* v. *Fletcher etc., Trust Co., supra,* and *Reed* v. *Adams etc., Wire Works, supra,* did not involve similar contractual provisions. They were evidently cited because of dicta in harmony with the quotation, *supra,* from *E. I. DuPont De Nemours and Co., Inc.* v. *Ferguson,* in which case the provision reads in part:

"he, the said William E. Ferguson, assumes all indebtedness of said company and agrees to make due, proper and legal settlement of all said company's indebtedness, in such manner as shall protect and save harmless etc."

The last phrase, set off by comma, modifies all of the preceding phrase which, though seemingly two covenants, is only one stated in tautological language, for an agreement to make settlement is merely an assumption of indebtedness. In *Corrigan Transit Co.* v. *Sanitary District* (1905), CCA 7th, 137 F. 851, and *United States for use of Carnegie Institute of Technology* v. *C. A. Riffle Co.* (1917), D. C. W. D. Penn., 247 F. 374, the clauses construed were in effect that the contractor assume all responsibility for damages to property. The context in each case shows that nothing more than indemnity was contemplated. In *Kansas City ex rel. Blumb* v. *O'Connell* (1889), 99 Mo. 357, 12 S. W. 791, the charter of the city required a contractual provision to pay laborers upon public work and the contract contained such a provision. It was contended that another clause therein was for the benefit of persons whose

property was injured through negligence in doing the work. It was held to the contrary. The decision may be sustained by applying the maxim *Expressio unius est exclusio alterius* for the intent to pay the laborers was clearly expressed while to find an intent to pay others it was necessary to resort to implication. It is said in *Devers* v. *Howard* (1898), 144 Mo. 671, 46 S. W. 625, that in the O'Connell case the "court expressly declined to express an opinion with respect to the power of the city to enter into a contract for the benefit of third parties." The eighth case relied upon, *Taylor* v. *Dunn* (1891), 80 Tex. 652, 16 S. W. 732, discusses the latter subject as well as indemnity and will be referred to hereinafter.

The next contention of appellee is that the city was without power to impose upon the contractor a liability beyond that of the city itself, that the contract is *ultra vires,* contrary to public policy and therefore unenforceable by appellant. Recently we reiterated:

> " 'that municipal corporations can exercise only (1) powers granted in express words; (2) those necessarily or fairly implied, or incidental to the powers expressly granted; and (3) those essential to the declared objects and purposes of the corporation.' Whether express or implied, the power must flow from a legislative grant. Where they are treated as implied, or essential to the declared objects and purposes of the corporation, it is assumed that the Legislature intended the powers to be exercised because of their incidental or essential character." *Southern Ry. Co.* v. *Harpe* (1944), ante, p. 124, 58 N. E. (2d) 346, 349.

It seems also to be the rule that such implied powers "must be indispensable to the attainment of the declared objects and purposes of the corporation." 37 Am. Jur. *Municipal Corporations,* § 112, n. 10, p. 724; *Walker* v.

*Towle* (1901), 156 Ind. 639, 59 N. E. 20. See also *City of Richmond* v. *Richmond Natural Gas Company* (1907), 168 Ind. 82, 79 N. E. 1031; *Local Union No. 26, N.B.O.P.* v. *City of Kokomo* (1937), 211 Ind. 72, 5 N. E. (2d) 624, 108 A. L. R. 111. Several Indiana cases seem to hold that a municipal corporation possesses common-law powers. *Baumgartner* v. *Hasty* (1885), 100 Ind. 575; *First National Bank* v. *Sarlls* (1891), 129 Ind. 201, 28 N. E. 434, 13 L. R. A. 481, 28 Am. St. Rep. 185; *City of Crawfordsville* v. *Braden* (1891), 130 Ind. 149, 28 N. E. 849, 14 L. R. A. 268, 30 Am. St. Rep. 214. This doctrine appears to be derived from common-law powers of ancient cities. Without resorting to the common law the decisions might have been put upon the ground that the powers were implied. Recognizing this principle we would have no trouble in holding that a municipal corporation has no power to insure the property of its citizens. But it does not follow that one contracting with the city may not expressly assume such an obligation

In two articles in American Jurisprudence, 37 Am. Jur., *Municipal Corporations,* § 119, and 43 Am. Jur., *Public Works and Contracts,* §§ 51 and 82, the principle is enunciated that a municipal corporation may not contract for the benefit of one individual or group of individuals. The outstanding case cited as authority for this statement is *Wymer-Harris Construction Co.* v. *Glass* (1930), 122 Ohio St. 398, 171 N. E. 857, 69 A. L. R. 517. Cited also are waterworks cases, which we think are in a class by themselves; *Lydecker* v. *Board of Chosen Freeholders of the County of Passaic* (1918), 91 N. J. L. 622, 103 A. 251, L. R. A. 1918D 351; and *Davis* v. *Mellen* (1919), 55 Utah 9, 182 P. 920, 7 A. L. R. 1193. The Lydecker case is distinguishable in that in New Jersey there must be a duty or liability independent of the contract as a basis for the contractual obligation

to the third party. In Indiana this is not the rule. *Reed* v. *Adams, etc. Wire Works, supra.* In the Davis case the contract was only incidentally involved.

Naturally appellee leans heavily upon the Wymer-Harris case. The company was repairing a viaduct under contract with the board of county commissioners. A pedestrian was killed by an automobile upon the viaduct. An action against the company was predicated upon "failure to perform the covenants of the contract . . . with respect to the precautions defendant had covenanted to take." It was conceded that the contract imposed upon the contractor a higher duty than ordinary care. The trial court refused to admit the contract in evidence and the plaintiff failed to recover. After an intermediate appeal the Supreme Court affirmed the judgment. The substance of the court's reasoning is contained in the following quotation:

> "If it be claimed that the provisions of the contract in the instant case, imposing upon the contractor a greater duty toward the public than the sum of the duties imposed upon the board of county commissioners in their official capacity by statute and the duty imposed upon the contractor by common law, need not be referable to any existing legal duty of either, but based upon the awarding of the contract as the consideration therefor, then of course the question arises whether the power to purchase extraordinary protection for the members of the public is among the powers conferred upon boards of county commissioners; for, whatever the fact may be as to the contractor having or not having included the cost of extraordinary protection to the public in his estimate of the price he could afford to accept for the performance of the contract in the instant case, if we were to hold that the commissioners had such power, future bidders would necessarily be required to include in their estimate of the price at which they could afford to contract to do public work the cost of purchasing indemnity against such extraordinary liability; and

> the effect of such a holding would be that the board
> of county commissioners have authority to expend
> ublic money to purchase extraordinary protection
> to persons traveling along a particular highway,
> which of course is not justified by existing legis-
> lation."

The argument is not convincing. If a taxpayer were seeking to enjoin the payment of public money by the city as consideration for such a promise a different question would be presented. But here the consideration has been paid to the contractor and the action is upon his promise.

It seems to us also that a court is getting upon dangerous ground when it enters the field of public policy. That ordinarily is for legislative determination. The legislature might provide the same kind of remedy for consequential damages as appellant claims under this contract. That the contractor assuming such liability would add his compensation therefor into his bid and consequently construction of public works would become more expensive may be an argument against the legislation. But we suspect that it would be countered by the proposition that much of modern legislation is designed to shift financial burdens from individuals to the general public. In spite of moral obligations children of aged persons are relieved from supporting them by a general old age pension scheme. Spreading the burden is the principle underlying all insurance. If without his fault a man's property will inevitably be injured by a public work, is there any reason in morals or justice why he alone should bear the loss? We are not advocating such legislation. That is none of our business. But we are saying that this is not the kind of factual situation that will justify a judicial declaration of public policy.

Whether or not the contract of Wymer-Harris Construction Co. had been fully executed does not appear. Perhaps in the opinion of the Ohio court it would make no difference. But in the case at bar we think it is controlling. Appellee made its bid with knowledge of the obligations of the contract. It is deemed to have taken them into consideration in fixing its price. It has been fully paid. It ought not now to be heard in denial of the obligation.

We are not alarmed by the argument that our decision sustaining liability to appellant will be used by municipal authorities as a precedent for writing into every contract for public works a similar provision. On the contrary they should and likely will use it as a warning to be more careful with their language.

In *Taylor* v. *Dunn, supra,* where a section of an ordinance, somewhat more specific than the contractual provisions in the Corrigan and Riffle cases, *supra,* was held to be indemnity only the court made this statement:

> "In construing such a contract, the power of a municipality to contract, as well as the subject matter of the contract, and the purpose intended to be accomplished by it, should all be looked to; and it ought never to be inferred that a contract made by a municipal corporation was intended to inure to the benefit of an individual, further than this may be necessary for the protection of the municipality, unless its charter expressly or by necessary implication confers the power to make contracts to inure to the sole benefit of individuals, and the intent so to do clearly appears in the contract itself."

The court evidently thought it had one of two alternatives, application of the third party beneficiary doctrine or construction of the ordinance as an indemnity provision. We think, with the Minnesota court, that the same language may serve both purposes. *La Mourea* v.

*Rhude, supra.* In the 53 years since the opinion in *Taylor* v. *Dunn* was written there has been steady progress in extension of the right of a third party to sue on a contract made for his benefit. Reluctance of the Texas court to accept this rule may have been responsible for its forceful denial of a city's power to contract for a benefit inuring to an individual. In the absence of statutory authority the city cannot so obligate itself but there are numerous modern cases enforcing the promise of a public contractor made with a city for the benefit of its citizens. In fact, the courts have been more liberal in applying the beneficiary rule to public than to private contracts.

In New York particularly is the rule well-settled. It is there qualified by the necessity of finding some "legal or equitable" duty of the promisor to the beneficiary independent of the contract. To meet this requirement the court in *Rigney* v. *N. Y. C. & H. R. R. Co.* (1916), 217 N. Y. 31, 111 N. E. 226, said:

> "The second element of liability, viz., some obligation or duty owing from the municipality to the owner of the abutting property, is also apparent. It exists in the fact that the city is under some obligation to protect the inhabitants, and when it enters into a contract for public work, which may result in damage to one of such inhabitants, for which otherwise he would be without remedy, the municipality may require the contractor to compensate the person injured."

"Some obligation" is an indefinite generality that does not conform to our conception of either a legal or equitable duty. If a moral obligation is meant, the concept conflicts with the general view that the duties of cities must flow from statutes, not good morals. But this matter is not our concern for, as before suggested, "the courts of this state do not require that such legal or equitable duty be shown." *Reed* v. *Adams, etc. Wire*

*Works, supra.* The Rigney case and numerous other New York cases, of which we cite several, do hold that contracts similar to the one before us sustain an action by the owner of property damaged by public work, for which damage otherwise he would have no remedy. *Pneumatic Service Co.* v. *P. T. Fox Contracting Co.* (1922), Sup. Ct. App. Div., 193 N. Y. Supp. 655, affirmed without opinion 235 N. Y. 567, 139 N. E. 737; *Schnaier* v. *Bradley Contracting Co.* (1918), Sup. Ct. App. Div., 169 N. Y. Supp. 88. See also *Smyth* v. *City of New York* (1911), 203 N. Y. 106, 96 N. E. 409, where the contract expressly excluded "any damage necessarily arising from proper construction."

We find similar authority in other states. *La Mourea* v. *Rhude, supra; Baker* v. *S. A. Healy Co.* (1939), 302 Ill. App. 634, 24 N. E. (2d) 228; *Louisville Gas & Electric Co.* v. *Longley & Co.* (1933), 250 Ky. 324, 62 S. W. (2d) 1036. See also cases cited 43 Am. Jur. p. 827, n. 2. The decision in *Bator* v. *Ford Motor Company* (1934), 269 Mich. 648, 257 N. W. 907, is properly put on other grounds but the opinion contains *dicta* expressing the same view as the above cited cases. In this opinion, as in *La Mourea* v. *Rhude, supra,* the Restatement of the Law of Contracts is relied upon. §§ 139-147 inclusive. Illustration 3 under § 145 Clause (a) is in point. It reads:

> "A, a municipality, enters into a contract with B, by which B promises to build a subway and to pay damages directly to any person who may be injured by the work of construction. Because of the work done in the construction of the subway, C's house is injured by the settling of the land on which it stands. D suffers personal injuries from the blasting of rock during the construction. B is under a contractual duty to C and D."

This section states the rule that generally a contractor for public work is subject to no duty to members of the

public for injurious consequences of performance, but Clause (a) recognizes that a contract may create such a duty and therefore liability for the breach. There is no suggestion that in requiring such a promise the city is exceeding its powers.

In some of the cited cases allowing recovery the injury was caused by explosion of dynamite used in excavation. It is contended that such cases are in a unique class. But in them recovery is predicated not upon the manner in which the injury occurred, but upon the promise made. It is easy to see a motive for exacting the promise when the use of explosives is contemplated. Likewise it is not difficult to see a motive for exacting the promise when, as alleged in the complaint, it was known that the subsoil was such that, if the sewer were constructed in accordance with the plans and specifications, of necessity the water would be drained from the subsoil and deprive plaintiff's building of its normal and natural lateral support. Liability is found, however, in the language of the contract, not in the motive for its execution.

As will have been observed our conclusion that the complaint states a cause of action has been reached upon examination of the contractual provisions without regard to allegations of extrinsic matters. We do not consider the probability of injury from tunneling 60 feet beneath the surface in the same category as the danger inherent in a blasting operation. Such probability is not now material though it may become so when in the trial arises the question of causation. Upon that subject we express no opinion.

The judgment is reversed with instructions to overrule appellee's demurrer to the complaint.

NOTE.—Reported in 60 N. E. (2d) 288.