## Pullman Company v. Pulliam, By, &c.

(Decided February 27, 1920.)

### Appeal from Boyle Circuit Court.

1. Damages—Punitive Damages—Instructions.—To authorize an instruction on punitive damages it must be shown that defendant

acted wantonly, recklessly, oppressively or with such malice as implies a spirit of mischief or criminal indifference to civil obligations.

2.    Damages—Assault Upon Passenger in Car—Submission to Jury.— Where a passenger in a Pullman car testifies that she was assaulted or attacked on three different occasions while in her berth, and that she attempted to notify the conductor at the time each of these attacks took place, and it is admitted that she did report at least the first attack, the plaintiff made out a case for the jury and the court did not err in so submitting it.

3.    Carriers—Sleeping Car Company—Care of Passengers.—A sleeping car company is obligated to keep a reasonable watch over sleeping passengers and their property.

4.    Damages—Action for Assault Upon Passenger in Car—Evidence. —Where the petition alleged plaintiff had been attacked or assaulted in her berth, in the absence of other allegations it was error for the court to admit evidence of any other acts or facts not connected with or incident to those charged in the petition.

5.    Negligence—Pleading.—Negligence may be averred in general terms and under such an allegation plaintiff may show any specific acts of negligence, but a plaintiff undertaking to specifically set forth the negligent acts complained of, can not prove or rely upon others.

6.    Trial—Argument of Counsel.—A great latitude is and should be allowed counsel in making arguments to the jury, but counsel should be careful in the presentation of their causes to confine themselves to facts brought out in the evidence, or to reasonable deductions therefrom; beyond this counsel can not safely go.

GEORGE E. STONE and BINGHAM, PETER, TABB & LEVI for appellant.

EMMET PURYEAR, ROBT. HARDING and JOHN W. RAWLINGS for appellee.

OPINION OF THE COURT BY JUDGE QUIN—Reversing.

Defendant (appellant) is seeking the reversal of a judgment for $5,000.00, obtained by plaintiff at the hands of a jury.

The court sustained a motion for a directed verdict made by the Cincinnati, New Orleans & Texas Pacific Railway Co., a co-defendant.

Plaintiff took passage in a Pullman car in November, 1915, at Tuscaloosa, Alabama, destined for Georgetown, Ky., and she alleges that after retiring for the night she was awakened by some person invading the privacy of her berth and placing their hands upon her

person. She gave an alarm; after some time the Pullman conductor appeared and he assured her of protection. A second attack was made upon her; the conductor was again summoned and promised to keep a watch in the car thereafter. She was attacked a third time, when a ring was taken from her finger. As a result of these attacks she suffered great mental and physical pain, her nervous system was shocked, and she sustained permanent injuries.

We will discuss the several points urged for reversal in the order presented.

The court did not err in overruling the motion for a peremptory instruction; there was sufficient evidence to take the case to the jury, as will be seen later, when we take up the question of evidence. Instruction No. 1 is not erroneous; it reads:

"You are instructed that it was the duty of the defendant, Pullman Company, to guard and protect the plaintiff from any annoyance and assault so far as could reasonably be done by the exercise of ordinary care, while she was a passenger riding in its car; and if you believe from the evidence in this case that the privacy of plaintiff's sleeping apartment was invaded one or more times, or that (while so occupying said apartment) she was subjected to assault by having the hands of some person placed upon her against her will; or that a ring was taken from her hand against her will, and that by each, or any, or all of said acts she was injured, or frightened, or humiliated, or shocked; and that each, or any or all of said acts might have been prevented by the exercise of ordinary care and vigilance under the circumstances then and there existing upon the part of the agents and servants of the defendant in charge of said car, then the law is for the plaintiff, and you will find a verdict for her against the said company, and if you do not so believe you will find for the defendant."

It is argued that such instruction was susceptible of the construction that the action of the conductor in grabbing plaintiff's arm when she was going to the diner, as brought out in the proof, might have been considered by the jury to have been embraced in the language employed. We do not so understand it, but since a reversal must be ordered for other reasons, the court upon a retrial will insert the parenthetical clause found above. This will

overcome an apparent objection to an otherwise conced-edly proper instruction.

Instruction No. 2 is erroneous in two particulars, (1) there was no evidence that the assaults complained of were made by any agent or servant of the defendant and hence any reference to this fact should not have been em-bodied in the instruction. (2) It contained the further vice of allowing the jury to find punitive damages.

To authorize an instruction on punitive damages it must be shown that defendant had acted wantonly, reck-lessly, oppressively or with such malice as implies a spirit of mischief or criminal indifference to civil obliga-tions. L. & N. R. R. Co. v. Wilkins, Grd'n, 143 Ky. 572, 136 S. W. 1023, in which case the court quotes with ap-proval the following language found in Central Kentucky Traction Co. v. May, 126 S. W. 1092:

"Punitive damages are not authorized and should never be allowed, in any case, where there is not some evidence tending to show that the defendant has acted maliciously, willfully, or with such gross negligence as to indicate a wanton disregard of the rights of others (Koestel v. Cunningham, 97 Ky. 421), or, where there is conduct on the part of the defendant indicating a pur-pose to have plaintiffs injured or of a reckless disregard of the safety of plaintiff's person (McHenry Coal Co. v. Sneddon, 98 Ky. 684)."

See also South Covington & Cincinnati Street Ry. Co. v. Barr, 147 Ky. 549, 144 S. W. 755; L. & N. R. R. Co., v. Logan's Admrx., 178 Ky. 29, 198 S. W. 537.

The record contains no evidence of any conduct or misconduct on the part of defendant's agents or serv-ants sufficient to bring the case within the rule stated above and the court erred in submitting this question to the jury.

It is said the verdict is not sustained by the evidence but with this contention we cannot agree. Plaintiff tes-tified: She was on her way to visit her grandmother at Falmouth; she left Tuscaloosa about 4:40 p m.; she had twenty dollars in her shoes, and some remark was made by her school friends not to take off her shoes; this was in the presence of the porter and conductor; she retired about 8:30; about 11 p. m. she was awakened and put her hand out and touched a large, rough hand, which was jerked away; she turned on the light in the berth, rang the bell and in about ten minutes the conductor came and

he laughed at her; the lights were turned out in the sleeper and while she was still awake, about two hours later, some one touched her foot; she screamed and rang the bell; the conductor came and said he would leave the big light burning and told her that if any one came again to try to see who it was. After the lights had been put, along about 3.30 or 4 a. m., some one again touched her foot; she raised up, put her right hand out and as she did so some one grabbed her hand and took off her cameo ring; she screamed and a woman in the opposite berth asked what was the trouble; although she rang the bell no one came; soon thereafter it was daylight. She never closed her eyes after the first attack; as she went to the dressing room she saw the porter looking at her, as she says "with an evil eye." This so frightened her that she finished dressing in her berth. Later she went to the dressing room with a woman passenger; she told the train conductor of the loss of her ring.

The Pullman conductor tried repeatedly to talk to her; offered to assist her to the diner; she declined and "he kinda grabbed her arm;" she was in a state of collapse when she reached Georgetown; cried all the way to Falmouth; couldn't control herself; wouldn't go to her room alone, in the daytime; she is still nervous and can not sleep alone; she was never sick before. She went to see a physician the second day after she reached Falmouth. Her testimony as to her nervous condition is corroborated by other witnesses, including her mother.

The physician, visited by plaintiff at Falmouth, gave his deposition in which he said he had known plaintiff all her life; that he saw her on November 26th, in his office; she was then suffering from a skin affection; she was anaemic and in a generally run down condition. He regulated her diet and gave her a tonic; his treatment lasted for about three weeks; she seemed to have improved when she left. He did not recall that the patient said anything to him about any disturbance on the railroad train, or mentioned the loss of her ring.

The rule governing sleeping car companies is thus stated in Pullman Palace Car Co. v. Hunter, 107 Ky. 519, 54 S. W. 845, 47 L. R. A. 286:

"The main inducement offered to the traveling public to occupy sleeping cars, and to pay the extra fee charged therefor, is that the fatigue and discomfort of railroad

travel is in some degree ameliorated by being able to sleep with security; and the company, in advertising its accommodations for sleeping, and accepting compensation therefor, becomes thereby obligated to keep a reasonable watch over the safety of its sleeping passengers and their property; and this seems to be the measure of their responsibility as defined by other courts."

To same effect see 10 C. J. 1177; Pullman Co. v. Schaffner, 126 Ga. 609, 55 S. E. 933, 9 L. R. A. (N. S.) 407; Pullman Palace Car v. Harch, 30 Tex. Civ. App. 303, 70 S. W. 771; Calder v. Southern Ry. Co., 89 S. C. 287, 71 S. E. 841.

As to defendant's evidence: The Pullman conductor testified that he was on watch from the time he left Chattanooga at about 10:40 p. m. until 3 a. m., and that when the call came from lower No. 10, the berth occupied by plaintiff, he answered as soon as he could, and when plaintiff told him that someone had placed their hands in her berth he promised to keep watch and went into the drawing room, which is about 12 feet from lower No. 10; assorted his tickets, and remained there until 3 a. m. when he called the porter. The end lights were burning; he told the porter what plaintiff had said and for him to keep watch. He heard nothing further. Plaintiff said nothing of losing her ring. Neither the porter nor conductor heard the conversation about the twenty dollars at Tuscaloosa. The porter came on duty at 3 a. m. and sat on a stool at the end of the car shining shoes. He called plaintiff for Georgetown, had to call her two or three times; she told him of losing her ring; he looked for it and she assisted him in the search. When the train conductor came through he told him to look again, which he did; said plaintiff showed no signs of nervousness, that he brushed her clothes, she tipped him and he carried her baggage to the platform at Georgetown. He had no call from lower 10.

The defendant accounted for all the berths, both lower and upper in the sleeper, many of which, including Nos. 8 and 12, were occupied by members of a football team from Chattanooga to Danville. Two or three of these boys testified; they said they heard no outcry.

Complaint is next made of the admission of incompetent evidence.

There is no general allegation of negligence, plaintiff's case being predicated upon the three specific as-

saults alleged in the petition. Negligence may be averred in general terms and plaintiff under such an allegation may show any specific acts of negligence, but having undertaken to specifically set forth the negligent acts complained of she cannot prove or rely upon others. Daniel Boone Coal Co. v. Turner, 181 Ky. 756, 205 S. W. 931; Hart v. Roth, 186 Ky. 535, 217 S. W. 893. The evidence should have been confined to the issues made by the pleadings and it was error to admit testimony as to the rudeness of the conductor, the evil look of the porter, or of any acts or facts not pertinent to the negligence charged.

It would require rather a tedious detail to enter into a further recital of the evidence, nor would any useful purpose be subserved by so doing. Much of it was incompetent and irrelevant; the court repeatedly admonished the jury not to regard certain statements; defendant's objections were in the main sustained, but with the several admonitions and favorable rulings there was so much of this character of evidence before the jury, as renders it impossible to say what effect this testimony may have had upon, or to what extent it may have influenced their verdict. The trouble grew out of the latitude of the inquiry; a too liberal interpretation of the questions at issue; the scope of the evidence was too broad. The sole issue triable was the invasion of the plaintiff's berth, the three attacks or assaults, and if upon the return of the case the evidence is limited to this issue, much of the complaint as to the admission of evidence will be eliminated.

Nor was such evidence competent under the rule that such facts, though not in issue, were so connected with the issuable facts as to form a part of the same transaction or subject matter as to make them relevant to the facts.

Appellant's dream theory does not impress us. While not specifically versed in the phenomenon of dreams, our limited knowledge thereof is such as to dispel any idea that plaintiff could have had three separate visions within the space of a few hours that some one was attacking or attempting to assault her. Especially when she says she never closed her eyes after the first experience.

Another ground for reversal is the misconduct of counsel both during the trial and in the argument to the jury. The one objectionable statement of plaintiff's counsel during the examination of defendant's conductor, was withdrawn as it should have been and, of course, it will not be repeated upon the next trial.

During the closing speech by plaintiff's counsel, defendant's counsel interposed many objections, and repeatedly moved to discharge the jury because of improper argument; these were overruled.

It is good to be zealously affected always in a good thing, says the Apostle Paul (Gal. 4, 18). Passionate ardor for a client's cause; eagerness for victory, the enthusiasm and interest that comes to one imbued with the justness and righteousness of his side of a lawsuit will oftentimes lead an attorney in argument to overstep the bounds of propriety, forget the law and the evidence, get outside the record and bring to the attention of the jury matters having no bearing upon the questions involved. Sometimes improper argument is unintentionally made; then again resort thereto is done intentionally. Great latitude is and should be allowed counsel in making their arguments, but counsel should be careful in the presentation of their case, to confine themselves to facts brought out in the evidence, and to reasonable deductions to be drawn therefrom. They cannot safely or properly go beyond this limit. C. St. L. N. O. & R. Co. v. Rowell, 151 Ky. 313, 151 S. W. 950; L. & N. R. R. Co. v. Crowe, 32 R. 1145, 107 S. W. 808; L. & N. R. R. Co. v. Payne, 133 Ky. 274, 127 S. W. 993; Kentucky Wagon Mfg. Co. v. Duganics, 113 S. W. 129; I. C. R. R. Co. v. Proctor, 122 Ky. 92, 89 S. W. 712; C. N. O. & T. P. Ry. Co. v. Martin, 154 Ky. 348, 157 S. W. 710; Owensboro Shovel & Tool Co. v. Moore, 154 Ky. 431, 157 S. W. 1121; L. & N. R. R. Co. v. Baker's Admr., 183 Ky. 795, 210 S. W. 674.

In the present case plaintiff's counsel on more than one occasion got beyond the lines of proper argument and did not confine himself to the real issues. This was doubtless due, in part, at least, to the wide range taken by the evidence. But the evidence will be restricted on the next trial as herein indicated and counsel should confine himself thereto, or to any deductions reasonably flowing therefrom.

The ground that the verdict is excessive is well taken. The evidence did not warrant the amount allowed; perhaps the award was enhanced by instruction No. 2 or counsel's passionate appeal to the jury. Since a new trial will be free from the erroneous instruction, and counsel in his argument will be governed by the views herein expressed, should a verdict be rendered in plaintiff's favor it probably will be tempered by the facts appearing in the record.

For the reasons given the judgment is reversed for further proceedings consistent herewith.