### Norton, Jr. v. Winstead.

(Decided February 1, 1927.)

### Appeal from Rockcastle Circuit Court.

1. Assault and Battery—Evidence Held Not to Show Verdict for Defendant in Action for Assault and Battery was Flagrantly Against Evidence.—Evidence, in action for assault and battery, held not to justify conclusion that verdict for defendant was so flagrantly against evidence as to be result of passion or prejudice.

2. Trial—Argument on Plaintiff's Previous Attempts to Assassinate Defendant Held Not Misconduct Under Evidence.—Counsel's argument in action for assault and battery, relative to plaintiff's

previous attempts to assassinate defendant, held not to constitute misconduct, in view of evidence.

3. Trial—Counsel May Recite Evidence and Comment Thereon and Draw Reasonable Deductions and Inferences Therefrom.—It is not improper for counsel to recite evidence and comment on it and draw reasonable deductions and inferences therefrom, and in doing so he should be given reasonable latitude.

C. C. WILLIAMS for appellant.

B. J. BETHURUM and JOHN S. CARROLL for appellee.

OPINION OF THE COURT·BY JUDGE McCANDLESS— Affirming.

R. P. Norton, Jr., sued James Winstead for assualt and battery. A jury trial resulted in a verdict for defendant, upon which judgment was entered dismissing the petition. Plaintiff appeals.

The difficulty upon which the suit was based occurred in the Rockcastle county jail, both parties being prisoners at the time. Norton was serving sentence for a violation of the liquor laws and accorded the freedom of the jail. Winstead was in custody in default of bail, charged with the murder of Watt Norton, a cousin of appellant, and confined in a room on the first floor of the building. This room was not well lighted and was occupied by several prisoners. On the day of the difficulty the jailer called Norton and another prisoner (Hall) from an upper room to come down and take out a tub of trash, and admitted them into this room from the outer door. Norton claims that he could not see distinctly but went around the tub and started to pick up the handle, when Winstead, without any warning, struck him on the top of the head with a bottle filled with water, inflicting serious and permanent injuries upon him, and followed this by knocking him out of the door. The jailer heard the lick but did not see the difficulty. Hall, who accompanied Norton, was unable to tell how it occurred. He was in the act of picking up the tub at the time he heard the lick struck.

Winstead testifies that at the time Norton entered the room he was sitting on a bench; that Norton was in a crouching position; he started toward him as if he was going to strike him; he could not see what was in the appellant's hand and thinking his life was in danger he threw a bottle at him and then shoved him out of the door; that a few months previous and while he was out

on bail Norton laid in wait behind a shock of fodder near a road he was travelling and menaced him with a pistol; that about the same time Norton came to his house one night after dark and fired two shots at him while he was in his room; that he went to the window and saw Norton in the yard about thirty yards away. The moon was shining and he was able to recognize him. Two other witnesses were in Winstead's house and heard the shots fired and saw where one of them struck the ceiling, but these witnesses lay down and remained on the floor for several minutes without attempting to see who was the offender. Two other parties who passed Winstead's house the same night testify that they saw two men in Winstead's coal house, one of whom was about the size of Norton, and that they went on, and as they reached a point about one-half mile distant heard shots in the direction of Winstead's house.

Another inmate of the jail testifies to overhearing Norton making threats against Winstead while in the jail, which he repeated to the latter.

On appeal the instructions are not criticised, but it is urged that the verdict is flagrantly against the evidence. As to this, if Winstead's version is correct, the jury were authorized to find for him. They were the sole judges of the credibility of the witnesses, and in accepting Winstead's version we cannot say that the verdict is so flagrantly against the evidence as to appear at first blush to be the result of passion or prejudice.

It is also urged that the court erred in the admission and rejection of evidence. However, a close inspection of the record shows that the appellant is in error as to this. His objections were sustained to the incompetent questions to which he refers and the court admitted the evidence to which he claims he was entitled. We find no merit in this contention.

The last insistence is misconduct of counsel for appellee in his closing argument to the jury in which he said: "This plaintiff attempted to assassinate defendant twice; he laid in wait for him on the roadside; he shot into defendant's home and tried to murder him; under these circumstances you should not give the plaintiff one cent. To do so would be an outrage on decency and humanity."

It is not improper for counsel to recite the evidence and comment upon it and to draw reasonable deductions

and inferences therefrom, and in doing this he should be given reasonable latitude. 2 R. C. L., page 411, sec. 9; 21 R. C. L., pages 414-416; 38 Cyc. 1485; Lou. Gas Co. v. Ky. Heating Co., 33 Ky. L. R. 912; L. & N. R. R. Co. v. Vaughan's Admr., 183 Ky. 829; Pullman Co. v. Pulliam, 187 Ky. 213.

It does not appear that this rule was violated in this case. While stated in strong language the argument seems to have been based on the evidence.

Wherefore, perceiving no error, the judgment is affirmed.