## Fidelity & Deposit Company of Maryland et al. v. Commonwealth, for Use of Freer et al.

(Decided October 29, 1929.)

N. W. UTLEY, JOHN KING, D. P. SMITH and C. C. MOLLOY for appellants.

C. C. GRASSHAM and J. W. BLUE for appellees.

OPINION OF THE COURT BY JUDGE WILLIS—Affirming on cross-appeal and reversing on direct appeal.

One Sunday evening in December, 1926, as the people of Eddyville were gathering at their various places of worship, one Jim Ferguson, with a companion, was driving an automobile rather recklessly about the city. It was known that the sheriff held several misdemeanor warrants for the arrest of Ferguson. He had been arrested on some of them, but had escaped from the custody of the jailer. Earl Moneymaker, a deputy sheriff, learned of the presence and conduct of Ferguson, and notified Sam G. Cash, the sheriff, who lived outside of the city, to bring the warrants and to help arrest Ferguson. The sheriff and his son came to town and joined the deputy sheriff and the chief of police of Eddyville in an effort to apprehend the accused. The officers were stationed at the intersection of Franklin and Water streets, a prominent and well-lighted corner. Ferguson soon drove along Franklin street, at its intersection with Water street, and was there called upon by the officers to stop and submit to arrest. He knew the officers, and was aware of their purpose to execute the warrants upon him. Moneymaker stepped out into the intersection and endeavored to stop the car. Ferguson speeded up the car, and, according to the weight of the evidence, tried to run down the deputy sheriff. The latter pulled his pistol and fired four shots at the automobile. The direction of these shots was across Franklin street. The sheriff was then back of the automobile, on the opposite corner from the deputy sheriff, and immediately fired two shots toward the escaping car. The general direction of these shots was along and across Franklin street, upon which the car was speeding away from the officers. The car came to a stop at a point in Franklin street about 80 yards from the intersection with Water street, and there is testimony that two flashes of a pistol were seen issuing from a space between the windshield and curtain, and that reports were heard of two pistol shots fired from Ferguson's car.

A young man named John Freer was walking on the sidewalk about opposite the place where Ferguson's car stopped, and some time during the progress of the shooting he was struck in the abdomen by a stray bullet. He was very seriously injured, and later instituted this action in the Lyon circuit court against the sheriff, the corporate surety on his official bond, and the deputy

sheriff, to recover damages in the sum of $54,000. The plaintiff applied for and was granted a change of venue to the Trigg circuit court, where a trial resulted in a verdict for the plaintiff in the sum of $7,000. A judgment was rendered upon the verdict against the sheriff and his surety jointly for the sum of $2,500, the penal amount fixed in the bond, and a further judgment was entered against the sheriff alone for $4,500. The action against the deputy sheriff was dismissed. The sheriff and his surety have prosecuted the present appeal, and the appellee has taken a cross-appeal to test the validity of the statute limiting the liability of the surety to the penal sum designated in the bond.

Appellants complain that (1) the court erred in denying a motion for a directed verdict; (2) in giving and refusing instructions to the jury; (3) in permitting an improper and prejudicial argument on behalf of plaintiff to be made to the jury; and (4) in refusing to set aside the verdict on the ground that it was flagrantly against the evidence.

1. It was the theory of the plaintiff that he was struck by a bullet from the sheriff's pistol, which was fired without justification in an attempt to arrest Ferguson upon a charge of misdemeanor, when he was offering no resistance, except flight. The defense was rested upon two grounds. The sheriff denied that he shot plaintiff, and contended that the injury was inflicted by a shot from Ferguson's car. There is some testimony tending to show that Freer himself first thought he was shot by an occupant of Ferguson's car. But, if the plaintiff was struck by a bullet from the sheriff's pistol, it was nevertheless insisted by him that the shooting was necessary and excusable, because Ferguson had committed a felony in resisting the officers and in attempting to injure the deputy sheriff, which made it lawful to shoot in order to prevent the escape of the felon. There is some testimony that tended to sustain the theory of the plaintiff, which rendered it proper to submit the case to the jury. The conflict in the evidence made it necessary for the jury to determine the issues between the litigants. It is argued that some of the testimony relied upon to produce the conflict in the evidence was vague, incredible, and unconvincing; but it is well settled that the credibility of the witnesses is for the jury and may not be determined by the court. It is not error to deny a request for a directed verdict, when there is any evidence tending to sustain the cause of action alleged by the plaintiff. Mead

v. Ashland Steel Co., 125 Ky. 114, 100 S. W. 821, 30 Ky. Law Rep. 1164; Supreme Lodge, K. of P., v. Bradley, 107 S. W. 209, 32 Ky. Law Rep. 743; Terrell v. Southern Ry. Co., 225 Ky. 645, 9 S. W. (2d) 993; Hobson, Blain & Caldwell on Instructions to Juries, p. 31, sec. 54; Mylett's Adm'r v. Burnley, 163 Ky. 277, 173 S. W. 759.

2. The court gave the jury five instructions. The first instruction submited to the jury the plaintiff's theory of the case, and the second merely defined the measure of damages. Instruction No. 5 was a formal one advising the jury that a verdict might be made by nine or more of them agreeing thereto and signing it. These instructions are not, and could not be, complained of, if the case was to go to the jury at all. Serious criticism is leveled at the third and fourth instructions given by the court. The third instruction told the jury that the verdict should be for the defendants, if it was found from the evidence that the shots were fired in the necessary, or apparently necessary, defense of the deputy sheriff. It is hard to see how that instruction could have prejudiced the defendants. The evidence tended to show that Ferguson had attempted to run down the deputy sheriff, and when the sheriff fired his pistol he could not see that the deputy sheriff was safe. Whilst the sheriff did not specifically claim that he shot to save the deputy, insisting that he had fired to prevent the imminent escape of a felon, yet the court was justified by the evidence in submitting the matter to the jury. The court might very properly omit the instruction, if defendants do not desire it given, since they alone could complain, if that defense was not submitted. But we see no error on the part of the court in presenting to the jury the law to govern them, if the facts should be found as therein outlined, when there was evidence to warrant it.

The fourth instruction reads:

"The court says to the jury that it was the duty of the defendant Sam G. Cash, and his deputy, Earl Moneymaker, to arrest Jim Ferguson under the warrants of arrest for misdemeanors which they held, and in doing so, the sheriff, or his deputy was authorized to use only such force as was reasonably necessary to accomplish that purpose, not to endanger life or limb, but if the jury believe from the evidence that, while the sheriff, Cash, and his deputy, were in the discharge of their duty, the offenders,

to wit, Jim Ferguson and Dock Bannister, sought by violence, or force, to intimidate, obstruct, hinder, or alarm the said Cash, or his deputies, in the performance of said duty, then the said Ferguson and those accompanying him, were committing a felony in the presence of the sheriff, for which said Cash was authorized to immediately arrest him, and to use such force as might be necessary, or as appeared to him in the exercise of reasonable judgment to be necessary, to accomplish that arrest, and if, in using such force the said Cash shot and wounded the plaintiff, John Freer, then the defendants would be excusable on the grounds of apparent necessity or unavoidable accident, and the jury will so find.''

The instruction was substantially correct. Reed v. Commonwealth, 125 Ky. 126, 100 S. W. 856, 30 Ky. Law Rep. 1212; Neal v. Commonwealth, 229 Ky. 832, 18 S. W. (2d) 314. But, since another trial of the case may be necessary, some important changes should be made in the phraseology of that instruction. If the attempt against the officers was made by either Ferguson or Bannister, his companion, the sheriff was equally justified in acting. Following the names of these men, which are connected by "and" in the instruction, should be inserted the words "or either of them." As written, the jury might have concluded that joint action by Ferguson and Bannister was requisite, whilst the sheriff was justified if either or both of them committed the wrong. The evidence rather indicated that Bannister did nothing, and that fact might have misled the jury. In lieu of the words "sought by violence," etc., in the instruction, there should be substituted suitable words to present the idea that if Ferguson or Bannister, or both, attempted by violence, force, threats, or menaces to alarm, disturb, hinder, obstruct, or intimidate the officers, or did so, the shooting was excusable under the conditions defined by the instruction. The instructions offered by defendants, except one, presented in different form the issues covered by those given by the court, and were properly refused. One offered instruction directed the jury to find for defendant, if the bullet that struck plaintiff was not fired by defendants, but was fired from a pistol in the hands of some other person. That form of instruction is not appropriate. The jury was told in effect and in proper form the same thing in the first instruction. The defendants were not liable in any event, unless the plaintiff was struck by a bullet from

a pistol fired by one of the officers; but the instructions already given made that fact plain, and were adequate to cover the subject. Louisville & N. R. R. Co. v. Rowland, 227 Ky. 852, 14 S. W. (2d) 174.

Appellants also complain that an instruction offered by the plaintiff, to the effect that the liability of the surety was limited to $2,500, the amount named in the bond, was refused. But appellants may not be heard to complain of rulings made against another party. If a particular instruction is desired by a party, it must be offered by him in writing. Louisville, H. & St. L. Ry. Co. v. Roberts, 144 Ky. 820, 139 S. W. 1073; Hobson, Blain & Caldwell on Instructions to Juries, sec. 41, p. 22. In Waddle v. Wilson, 164 Ky. 228, 175 S. W. 382, a different question was presented, as the surety had paid on a previous liability more than half the amount of its bond, which reduced pro tanto its remaining liability. Notwithstanding that fact, the lower court had held it liable for the full amount. Cf. Romans v. McGinnis, 156 Ky. 205, 160 S. W. 928.

3. In an argument to the jury counsel for plaintiff was permitted to say: "Gentlemen, the bond of Sam Cash is like an insurance policy, and he paid the bonding company to insure him against his wrongful acts. I have an insurance policy covering damages caused by my automobile when being driven. Recently I ran into a lady in Paducah, and I did not resist payment under that policy. I didn't wait, but I myself made the company pay her $4,000. That is what I was paying for, just like Sam Cash was paying for his insurance."

The defendants objected to the argument, and the court overruled the objection, saying: "They are objecting to your analogy. It is your opinion. You have a right to draw your own analogies. There is a difference between automobile insurance and a sheriff's bond. Go ahead with your argument."

The court erred in overruling the objection. The statement was not the mere opinion of counsel, or a simple analogy, proper to be called to the attention of the jury. It was a positive statement of an irrelevant fact, coupled with a subtle suggestion that the misfortune of plaintiff was practically insured against by the sheriff's bond, and that the sheriff should have done like the lawyer, and compelled the insurance company to settle. The entire statement should have been excluded, and the jury admonished not to consider it. Great latitude is allowed

counsel in presenting arguments to the jury, but care should be observed, both by counsel and the court, to confine the consideration of the jury to the case before it. Pullman Co. v. Pulliam, 187 Ky. 213, 218 S. W. 1005; Burdon v. Burdon, 225 Ky. 480, 9 S. W. (2d) 220. When extraneous matters of a character likely to prevent a fair trial are introduced into the argument, and seasonable objection to it is overruled, a verdict thus obtained is not allowed to stand. Cherry Bros. v. Christian County, 146 Ky. 330, 142 S. W. 726; Pullman Co. v. Pulliam, 187 Ky. 213, 218 S. W. 1005; Stearns Coal & L. Co. v. Williams, 177 Ky. 698, 198 S. W. 54; Kroger Grocery & Baking Co. v. Hamlin, 193 Ky. 116, 235 S. W. 4; Liverpool & London & Globe Ins. Co. v. Wright, 166 Ky. 159, 179 S. W. 49.

Attempt is made to justify the argument by saying that it was in response to argument of counsel for appellants to the effect that the sheriff's bond was not an insurance policy. Evans Chem. Works v. Ball, 159 Ky. 400, 167 S. W. 390. In our opinion, that accentuates, rather than neutralizes, the prejudicial effect of the improper argument. The jury should not be misled by the introduction of an element entirely foreign to the issues to be tried, and the subject-matter here involved was peculiarly calculated to prejudice the jury.

4. It is earnestly insisted that the verdict is not sustained by the evidence, but flagrantly against it. In view of the fact that another trial may be necessary, and the evidence then may be materially different, we do not pass upon, but reserve the question of the sufficiency of the evidence to sustain a verdict for the plaintiff.

5. On the cross-appeal it is contended for appellee that section 186d1, Kentucky Statutes, which requires that official and fiduciary bonds shall be for a definite penal sum, to be fixed and named therein, and that the liability of the surety shall be limited to the penal amount so fixed, is in violation of section 54 of the state Constitution. That section of the Constitution provides: "The General Assembly shall have no power to limit the amount to be recovered for injuries resulting in death, or for injuries to person or property."

Obviously the restriction on the power of the Legislature is addressed to a limitation on the liability of the wrongdoer, and has no application to the subject-matter of the statute mentioned. The surety's obligation is contractual, and the Legislature may provide the terms, con-

ditions, and limitations of official and fiducial bonds. Waddle v. Wilson, 164 Ky. 235, 175 S. W. 382; Hegarty v. Arkle's Guardian, 213 Ky. 15, 280 S. W. 139.

On the cross-appeal, the judgment will be affirmed. On the direct appeal, the judgment is reversed, for a new trial in consonance with this opinion.