## Louisville Gas & Electric Co. v. Longley & Co.

(Decided June 9, 1933.)

PETER, LEE, TABB, KREIGER & HEYBURN and CARY TABB for appellant.

WOODWARD, HAMILTON & HOBSON for appellee.

OPINION OF THE COURT BY JUDGE PERRY—Affirming.

The appellant, Louisville Gas & Electric Co., instituted this action against the appellee, Longley & Co., seeking to recover damages for injury to its gas pipes and mains, alleged caused by the construction of sewers in certain streets of Louisville, Ky., by the appellee.

The jury returned a verdict for the appellee, and, from the judgment thereon, appellant prosecutes this appeal, relying for its reversal upon the following alleged errors of the trial court: (1) Error in giving a peremptory instruction to find for the defendant on the first paragraph of the petition; (2) error in refusing to give a peremptory instruction to find for the plaintiff, Louisville Gas & Electric Company; (3) the verdict is not sustained by sufficient evidence and is contrary to law; and (4) errors in ruling upon admission of evidence.

The relative positions of the appellant and appellee upon this appeal being the same as that of plaintiff and defendant upon the trial below, for convenience we will hereinafter refer to them as plaintiff and defendant respectively.

Under the evidence in this case, it appears that the defendant, Longley & Co., constructed a sewer in and through Whitney avenue between Third and Seventh streets; in and through Third street, between Whitney and Young avenues; and in and through Bohannon street, between S street and Queen avenue. The plaintiff, Louisville Gas & Electric Company, claims that in constructing said sewers the defendant damaged certain of its service pipes, extending from its gas mains in the three named streets of Louisville, Ky., to the houses of its customers.

By the first paragraph of plaintiff's petition, it seeks to recover damages because of the alleged negligence off the contractor in breaking and cutting of its service pipes and in failing to support plaintiff's gas mains, lying and extending in the streets, close by the sewer ditches constructed by defendant.

By the second and third paragraphs of the petition, it pleads and seeks to recover damages for injury to its pipes and mains, under and by reason of a contract alleged made and entered into by the defendant, Longley & Co., and the city commissioners of sewerage, by which, it is claimed, the defendant agreed to repair

any damage caused to plaintiff's pipes and mains resulting from or by reason of its construction of the said sewers. In so pleading, plaintiff alleges that the defendant made with the commissioners of sewerage of the city of Louisville a contract, providing, in part, by article 5 thereof that "all the work, labor, equipment and materials to be done and furnished under this contract shall be done and furnished strictly pursuant to, and in conformity with, the attached specifications and the directions of the engineer as given from time to time during the progress of the work, under the terms of this contract. * * *" And that by article 6 of the said contract it is further provided that "the information for bidders, the proposal submitted by the contractor, the specifications, the contract drawings and such specifications, herein mentioned applying to the work embraced in this contract, * * * are made parts of this contract."

These "specifications" referred to as made a part of the contract, plaintiff further pleads, are, as provided by section 3 thereof, and so far as pertinent hereto, as follows:

"Section III. The contractor shall furnish and do everything, except as herein otherwise provided, necessary to complete the work in accordance with the terms of this contract, and as required thereunder. He shall make the requisite excavation for building the sewer and all other appertaining structures, do all ditching, diking, pumping, bailing and draining or otherwise disposing of water or sewerage encountered, all sheeting, shoring, bracing, cofferdamming and supporting; all fencing, lighting and watching; make all provisions necessary to maintain and to protect all buildings, fences, trees, poles, water pipes, gas pipes, sewers, surface drains, railways, and other structures in, on, across or adjacent to the work; repair all damage done to such structures; provide all bridges, or other means of maintaining travel; construct all concrete and brick work; set in place all iron and other metal work."

Plaintiff further charges that the defendant, pursuant to said contract, during the years 1927 and 1928 had constructed sewers through the said named streets

and avenues of Louisville, wherein the presence and location of plaintiff's mains and pipes were known to it, and that, in violation of its said contract, it cut and broke its service pipes, extending from its mains in said streets to its customers, and failed to protect or support the same, causing them to sag, break, and leak, and that defendant wrongfully refused to repair the damage so done them, as agreed under its contract, or to pay for the damage thereto, and that, by reason of such failure and refusal, plaintiff was obliged to and did immediately repair and replace said pipes and mains of necessity required in order to continue service to its customers and to prevent loss and injury from escaping gas, and that plaintiff expended in making said repairs in the said three streets the sum of $947.11, for which it prayed judgment, with interest and its cost.

Defendant answered, denying the allegations of the petition charging negligence in the construction of the sewers and pleaded contributory negligence on the part of the plaintiff, the provision of plaintiff's franchise (1923 Ordinances, page 339, section 5) that, "whenever the city * * * shall construct or reconstruct any sewers or connections along or across which said grantee shall have constructed any mains or pipes, it shall be the duty of said grantee at its own expense to change said mains or pipes so as to conform to said sewers", and by a further paragraph pleaded that the sewers constructed by the defendant were constructed by it under a contract between the defendant and the commissioners of sewerage, a corporation, and arm of the city of Louisville for governmental purposes, to wit, the construction and maintenance of sewers; that the construction of the sewers referred to were in fact made by, for, and on behalf of the city of Louisville under said ordinance and franchise; and that it was the duty of the plaintiff thereunder at its own expense to change its mains and pipes within the streets and to protect the same from loss, damage, or injury, and, if it failed to do so, it could recover; and pleaded the terms of said ordinance as a bar to plaintiff's right of action.

A demurrer was filed to this, the fifth paragraph of the answer, and sustained by the court, whereupon

plaintiff filed its reply, denying the charge of contributory negligence as alleged in the answer.

At the conclusion of all the evidence, the defendant moved for a peremptory instruction, which the court sustained, as to the first paragraph of plaintiff's petition alleging negligence on the part of the defendant in constructing the sewers, and overruled same as to its paragraphs 2 and 3 thereof, seeking recovery under the terms of defendant's contract had with the city, as described supra.

Thereupon the court gave the jury the following instructions:

"1. The court instructs you that if you believe from the evidence that by constructing said sewers or any of them the defendant, Longley & Company, damaged plaintiff's service pipes referred to in the evidence, then the law of the case is for the plaintiff, Louisville Gas & Electric Co., and you shall so find.

"But unless you believe from the evidence that plaintiff's service pipes were damaged by reason of the construction of said sewers or any of them, the law is for the defendant, Longley & Company, and you shall so find."

Under these instructions and evidence heard the jury found its verdict for the defendant, whereupon the plaintiff prosecutes this appeal, assigning as grounds for the reversal of the judgment entered thereon the alleged errors of the trial court as hereinabove set out

Turning our attention to appellant's first assignment of error alleged committed by the court in giving a peremptory instruction to find for the defendant on the first paragraph of the petition, wherein plaintiff sought damages upon the ground that defendant was negligent in the construction of the sewers in evidence, it becomes needful to here consider briefly the evidence bearing on the question of defendant's negligence. Plaintiff having thus chargd negligence and assumed the burden of showing it, the question arises, Was there any substantial evidence tending to establish it?

The plaintiff undertook to prove that the settling of the sewer ditch as constructed by appellee caused

the damage to its pipes and mains, and that the settling was brought about by the negligence of the defendant in failing to tamp the earth replaced in the ditch and by failing to fill in behind the open spaces caused by; and left upon pulling the side sheeting from out of the ditch after its partial refill. Plaintiff's witnesses testified, not that tamping of refill was *not* done, but only that they never *saw* any tamping or ramming of the refill done. One of them states he never saw any putting in by the defendant of the "back fill," but that he could not swear that they did not tamp it; also it is stated that the ditch was not filled to the top at the time the said sheeting was pulled, and therefore witness did not know whether the two-inch space left by pulling the sheeting was ever filled; further, it is admitted that, if the ditch was properly tamped, it would not settle. Also there was evidence that plaintiff's new gas main, put in by it after the back filling had been done, had not been damaged by the alleged settling of the refill of the ditch. Another witness stated he knew of no reason for the ditch settling except that the dirt was just thrown in by the defendant's crew and the rain settled it. Also it is stated, as the opinion of this witness that the service pipes were pulled out from the gas main or broken because the ditch settled, and also because, while the ditch was open, appellant's pipes were exposed across the ditch (about 12 feet) without any support. Witness Smith stated that he never saw any filling behind the sheeting which was pulled, and that, if a ditch is tamped, the probability is that it will not settle, and expressed the opinion that the break in the service pipe connections was caused by the settling of the sewer because not tamped. Witnesses testified that the gas main did not shift until after the sheeting was pulled, and that the ditch was about refilled when it was pulled, and the open space, so caused, was left unfilled and the dirt in the ditch sank because the refill was not properly tamped. Plaintiff's witnesses all in effect testified that its pipes and mains were damaged as the result of the caving in of the refill dirt in the ditch and the breaking away of the dirt from the sides of the ditch, because the refill was not tamped, and also that the damage was caused by defendant's failure to support and protect the pipes and mains left exposed by its ditch construction.

On the other hand, the evidence for the defendant

as given by A. H. Boerner, construction manager for the commissioners of sewerage, who was present and in charge of the construction of these sewers and saw the way in which the work was done, was to the effect that it was executed by the defendant in a very competent and skillful manner, and on cross-examination stated that it is one of the chief requirements of the commissioners in its sewer construction that the refill work be thoroughly tamped, and described the thorough mode of tamping the ditch refills, required by the commissioners.

It will be thus noted that the evidence of the several witnesses testifying for plaintiff is to the effect only that they did not see defendant tamping the back fill, which was only evidence of negative character, as it is not shown that they were present during all the time the work was in progress, and therefore they could not positively state that the tamping work was not done. Also no evidence was offered showing that the service pipes across the ditch should have been supported, but only that they sagged, yet without further evidence to the effect that their weight broke their connections with the main. Rather, the evidence shows that they did not break until after the back fill was made and settled. The only positive evidence about the tamping was that given by the engineer for the commissioners of sewerage, who positively testified that he saw that the work was properly done. The lower court, therefore, upon this showing concluded that there was no evidence tending to support plaintiff's cause of action, as alleged by paragraph 1 of its petition, based upon the theory of defendant's therein alleged negligence in constructing these sewers, and it therefore sustained defendant's motion for a peremptory instruction as to the first paragraph alleging it.

While we are of the opinion that there was here some evidence tending to show negligent construction by defendant especially when considered in connection with the plat filed in evidence by the plaintiff of cross-sections of the ditch, showing the breaking of the connection of its service pipes with its gas mains and a shifting of position of its gas main to a lower level, strongly indicating it was caused by the settling of the refill of the ditch and apparent, consequential cracking or falling in of the closely adjacent side earth, we are yet of the opinion that no prejudice could have thereby

resulted to the appellant from the peremptory instructions as given, in view of the further instructions given by the court fully covering plaintiff's contention, whereby the jury was told that, if it believed that by the construction of the sewers however done, plaintiff was damaged, it should find for it. This instruction fully covered plaintiff's contention of the right to recover both for negligence and also under the contract, as it permitted the plaintiff to recover if the jury, upon the evidence, believed its property had been damaged as the result of the defendant's construction of the sewers, independently of whether negligently constructed or not. Clearly under this instruction there remained no ground upon which plaintiff could complain of being prejudiced in its right to recover damages for injuries alleged caused by defendant's negligent construction of the sewers, when it was allowed by the instructions given to recover damages if its property was at all or in any way damaged, as a result of the defendant's construction of the sewer, whether negligently done or not.

Appellant next complains that the court erred in refusing to give a peremptory instruction to find for the plaintiff.

As stated, the instructions given by the court to the jury were that, if plaintiff's pipes were damaged by the construction of the sewers, plaintiff was entitled to recover. It is clear that this instruction was given upon the theory that the defendant became an insurer of the safety of or against damage to plaintiff's pipes by reason of the contract between it and the commissioners of sewerage. There was thus submitted for the consideration of the jury the narrow question of whether appellant's damage alleged done to its gas pipes and main was brought about by the construction of the sewers, and the jury, under the instructions as given it and after hearing the evidence, found that the claimed injury to its property was not so caused. While we are of the opinion that the evidence, as shown by our brief resume thereof, largely proponderates in favor of the plaintiff in tending to show that the damage done its pipes and mains was caused by the defendant's construction of the sewers in evidence, as the evidence very clearly tended to show that the sheeting was pulled by the defendant without filling the resulting open spaces and that the settling of the dirt in the

ditch caused the main to crack and pipe connections to break and that the dirt in the ditch would not have caved in or settled in this hurtful way had it been properly tamped, yet as against this testimony of the plaintiff's witnesses, even though partly matter of opinion and partly negative in character, there is the positive testimony given for defendant by the engineer in charge of the work for the commissioners that the refill of the ditch was properly made by the defendant, and that a thorough tamping or ramming of it was had and was a primary requisite of the commissioners for the proper construction of its sewers. Also there was evidence to the effect that the plaintiff constantly employed crews to repair its service pipes where such leaks occur; that rusty or imperfect connections may cause the trouble; and also that rainwater sometimes causes the earth to settle in a way to break these connections.

Inasmuch as it is the well-established rule that, if there is any evidence to support plaintiff's claim, the evidence should be submitted to the jury (Royal Neighbors of America v. Laufman, 158 Ky. 358, 164 S. W. 966; Louisville & I. R. Co. v. Roemmele, 157 Ky. 84, 162 S. W. 547), the trial court rightly deemed such evidence as summarized, supra, sufficient to justify the submission of the question of defendant's liability to the jury. To have refused its submission to the jury, the court would have in effect assumed the function of the jury by finding as a fact that, even while there was evidence for the defendant tending to show that it had properly constructed and refilled the ditch according to standard and prescribed rules required in such work, and also that, notwithstanding the fact shown by the evidence that the plaintiff company suffered leakage and disconnections in its service pipes even where entirely separate and unassociated with any nearby sewer construction work, it did none the less here find, upon this conflicting evidence before it, that the damage suffered by plaintiff to its service pipes and the shifting of its gas mains was conclusively shown due to, and caused by, defendant's improper construction of this sewer ditch. We conclude that the court rightly refused the requested peremptory instruction upon the question here presented of whether or not plaintiff's service pipes were damaged by the defendant's construction of the sewers, as under this conflicting evi-

dence it was one for determination by the jury, and was therefore properly submitted to it. To such effect in Grinstead v. Feinstein, 231 Ky. 502, 21 S. W. (2d) 806, 807, was it held, where the court said:

> "It is the well-settled rule of this court that a peremptory instruction may only be given if, admitting every fact shown by the plaintiff's evidence to be true, as well as all reasonable inferences that can be drawn therefrom, he has failed to establish his case; and, where reasonable minds may honestly differ as to the truth or falsity of conclusions and deductions to be drawn from the evidence, the question is for the jury. Nelson v. Black Diamond Mining Co., 167 Ky. 676, 181 S. W. 341; Collett's Gdn. v. Standard Oil Co., 186 Ky. 142, 216 S. W. 356; Ham v. Hord, 189 Ky. 317, 224 S. W. 868. Or, to put the rule in other words, a peremptory instruction is not authorized unless, after admitting the facts shown by the plaintiff and every reasonable inference to be deduced from the facts proven on the trial, his cause of action is not supported in any degree. Chicago, St. L., etc., railroad Co. v. Armstrong, 168 Ky. 104, 181 S. W. 957."

See, also, Fidelity & Deposit Co. of Md. v. Commonwealth, 231 Ky. 346, 21 S. W. (2d) 452; Commonwealth Life Ins. Co. v. Pendleton, 231 Ky. 591, 21 S. W. (2d) 985, 66 A. L. R. 1526; Frazier v. L. & N. R. Co., 231 Ky. 107, 21 S. W. (2d) 140.

Appellant's contention that it was entitled to recover under the provisions of the defendant's contract had with the commissioners of sewerage, requiring it to protect the gas pipes and repair all damage done, as a right based upon a contract made by the commissioners for its benefit, we are of the opinion is meritorious. The provisions of this contract, upon which defendant's liability is based, meet the requirements of and come within the rule as announced in the case of Aetna Casualty & Surety Co. v. United States Gypsum Co., 239 Ky. 247, 39 S. W. (2d) 234, cited and relied on by appellant, but we are further of the opinion that recognition of such right of plaintiff under the contract was embraced within the holding of the lower court, as clearly shown by its instruction given, authorizing plaintiff to recover if the jury found that the damage to its pipe lines had been caused by the sewer con-

struction work. Of course, the plaintiff could not re-cover for damages to its gas pipes which had not been caused by the defendant, whether it sued under the provisions of the contract between the city and the contractor or sued in tort for an injury caused by the negligence of the defendant. In either event, the right of recovery would have to rest either upon defendant's negligence in the one case or breach of contract in the other, as having caused plaintiff's complained of damage.

In the instant case the jury has found the plaintiff's damage to its service pipes was not caused in either way, or, in other words, has definitely stated that its damage was not caused by defendant's sewer construction work. This question having been so determined by the jury upon conflicting evidence submitted under proper instructions, it cannot now be rightly complained of.

The other assignment of error herein complained of by appellant we are of the opinion is without merit, or the complained of admission of testimony was, if at all erroneous, not of substantial prejudice to appellant's rights.

Therefore, the lower court's complained of rulings being in harmony with the views herein expressed, it follows that its judgment should be and is now affirmed.