[No. 7521–7–I.   Division One.   May 27, 1980.]

WASHINGTON NATURAL GAS COMPANY, *Appellant,* v. TYEE CONSTRUCTION COMPANY, ET AL, *Respondents.*

*Thomas C. McKinnon* and *Cartano, Botzer & Chapman,* for appellant.

*David N. Lombard, Ferguson & Burdell, Paul B. Goodrich,* and *Perkins, Coie, Stone, Olsen & Williams,* for respondents.

SWANSON, J.—Plaintiff Washington Natural Gas Company (Gas Company) brought suit against Tyee Construction Company (Tyee) and Puget Sound Power and Light Company (Puget) to recover for damage to its underground gas lines[1] at 10 locations in a residential subdivision. The Gas Company's contention was that Tyee, a contractor employed by Puget to underground its power lines, had "barked" a protective covering off existing gas lines during the process of laying the power lines. The trial court, sitting without a jury, dismissed the complaint, and the Gas Company appeals. We find no error and affirm.

In 1968 defendants Tyee and Puget entered into a contract for the conversion of Puget's overhead power lines to underground lines in a Bellevue subdivision. Tyee's job was to dig the necessary trenches, install transformers, and lay the power lines. By the contract, Tyee was required to allow the telephone company, fire department, and a television cable company to lay their respective lines before the trenches were backfilled.

---

[1]The lines are technically referred to as mains, services, or stubs, but in this opinion we will refer generally to gas lines.

Before starting work, Tyee had an employee of the Gas Company mark the locations of the underground gas lines. There was evidence that when one of the marked locations was approached, Tyee's employees used both a hand shovel and a backhoe to carefully dig the trench until the gas line was located. Once the line was located, the rest of the trench around it was dug with only a shovel. Tyee would then lay Puget's power line in the trench by hand. Dirt was tamped between the power line and the gas line to prevent contact.

According to the testimony of Tyee's foreman, extreme care was necessary because if the thin protective covering on the power line was crimped or damaged, the power line would explode. Testimony by witnesses for the Gas Company indicated if the protective wrapping on its gas line was removed, or "barked," and there was metal to metal contact between the gas line and other utility lines, corrosion would result. Such corrosion could lead to a gas leak and possible explosion.

In 1977, during the course of survey work by the Gas Company to determine whether its lines were intact, metal to metal contact was detected. Further tests pinpointed the contacts to 10 locations, and the Gas Company dug up the lines, discovering Puget's power lines in contact with the gas lines in all locations. (At trial, the Gas Company agreed to strike an allegation concerning 1 of the 10 locations and the trial proceeded regarding the other 9 locations.) The cost of repairing the damage was $2,167, and the Gas Company brought suit against Tyee and Puget when both refused to pay.

In answer to the complaint, both Puget and Tyee raised as a defense the special statute of limitation contained in RCW 4.16.300–.320.[2] There is no contention that the Gas

---

[2] "RCW 4.16.300 through 4.16.320 shall apply to all claims or causes of action of any kind against any person, arising from such person having constructed, altered or repaired any improvement upon real property, or having performed or furnished any design, planning, surveying, architectural or construction or engineering services, or supervision or observation of construction, or administration

Company's cause of action accrued within 6 years after Tyee completed work on the project. Thus, the issue presented is whether installation of the power lines was an "improvement upon real property" within the meaning of RCW 4.16.300.

The Gas Company contends that the power lines are not an improvement upon real property because they are not structures and are not permanent in nature because they are subject to relocation or removal when necessary in the interest of public health, safety, or welfare. *See Washington Natural Gas Co. v. Seattle,* 60 Wn.2d 183, 373 P.2d 133 (1962).

■ This contention is disposed of by our decision in *Pinneo v. Stevens Pass, Inc.,* 14 Wn. App. 848, 545 P.2d 1207 (1976). There we held that a ski lift is an improvement upon real property despite its being subject to removal upon expiration of the operator's special forest permit. We said:

> The legislative purpose in enacting RCW 4.16.300 *et seq.* suggests that a similarly comprehensive definition should be given to the term "improvement" as used in the statute of limitation context. The legislature adopted the particular statute of limitation to protect architects, contractors, engineers, and others from extended potential tort and contract liability. The statute has a broad

---

of construction contracts for any construction, alteration or repair of any improvement upon real property." RCW 4.16.300.

"All claims or causes of action as set forth in RCW 4.16.300 shall accrue, and the applicable statute of limitation shall begin to run only during the period within six years after substantial completion of construction, or during the period within six years after the termination of the services enumerated in RCW 4.16-.300, whichever is later. The phrase 'substantial completion of construction' shall mean the state of completion reached when an improvement upon real property may be used or occupied for its intended use. Any cause of action which has not accrued within six years after such substantial completion of construction, or within six years after such termination of services, whichever is later, shall be barred: *Provided,* That this limitation shall not be asserted as a defense by any owner, tenant or other person in possession and control of the improvement at the time such cause of action accrues." RCW 4.16.310.

"Nothing in RCW 4.16.300 through 4.16.320 shall be construed as extending the period now permitted by law for bringing any kind of action." RCW 4.16.320.

scope barring all causes of action that do not accrue within 6 years after substantial completion or termination of any of the specified services. Given the comprehensive coverage of the statute and the legislative intent behind its enactment,

> there seems no reason not to include within the favor of the statute all . . . whether they be planners and builders of structures, roads, playing fields or aught else that by broad definition can be deemed "an improvement to real property."

*Rosenberg v. North Bergen,* 61 N.J. 190, 198, 293 A.2d 662, 666 (1972).

We conclude that the ski lift is an "improvement" within the meaning of the statute. The ski lift adds to the value of the property, is an amelioration of its condition, and enhances its use.

(Citation omitted.) *Pinneo,* 14 Wn. App. at 852.

Under the same analysis, the power lines are an improvement upon real property even though potentially subject to removal under some circumstances. The power lines add to the value of the property and enhance its use, and Tyee, being a contractor, is clearly within the class to be protected by the statute.

The Gas Company attempts to draw a distinction between the word "upon," as used in RCW 4.16.300, and the word "to," found in similar statutes of limitation in other jurisdictions. We are not persuaded that by using the phrase "any improvement *upon* real property," (italics ours) the legislature intended to limit the statute to actions arising out of construction, etc., on the *surface* of the land only. As noted, the statute is broad in scope and comprehensive in coverage and intended to protect contractors, engineers, and others from extended liability. To limit the statute as the Gas Company suggests would defeat its obvious purpose.[3]

---

[3]We observe also that in *Rodriguez v. Niemeyer,* 23 Wn. App. 398, 595 P.2d 952 (1979), the statute was applied to bar a claim arising out of construction of a basement.

■ With regard to Puget, the Gas Company raises the proviso in RCW 4.16.310 which prevents an owner, tenant, or one in possession or control of the improvement from asserting the limitation as a defense. This issue, however, was not argued below and will not be considered on appeal. *Fuqua v. Fuqua*, 88 Wn.2d 100, 558 P.2d 801 (1977).

· ■ Although we hold that the Gas Company's claim is barred by RCW 4.16.300–.320, the trial court's decision may be affirmed on the basis that substantial evidence exists to support the finding that Tyee used reasonable care in laying the power lines.

The Gas Company asserts that the trial court arbitrarily disbelieved uncontradicted evidence. There is no dispute that the gas lines were damaged and were in metal to metal contact with the power lines. The trial judge stated in his oral opinion that had Tyee put on no evidence regarding the manner in which the power lines were laid, he would have to infer that Tyee was negligent. However, there was testimony at length by Tyee's foreman regarding the care exercised by Tyee in laying the lines. The evidence thus was in conflict.

Both Tyee and the Gas Company cite cases collected in an annotation which illustrate that whether a contractor exercised reasonable care is a question for the trier of fact. Annot., *Liability of one excavating in highway for injury to public utility cables, conduits, or the like*, 73 A.L.R.3d 987 (1976). A case cited therein and similar to the case at bar is *Louisville Gas & Elec. Co. v. Longley & Co.*, 250 Ky. 324, 62 S.W.2d 1036 (1933). There the plaintiff gas company, following a jury verdict in favor of the defendant contractor, argued that the trial court erred in refusing to instruct the jury to find for the plaintiff. The appellate court stated:

> While we are of the opinion that the evidence, as shown by our brief resume thereof, largely proponderates [*sic*] in favor of the plaintiff in tending to show that the damage done its pipes and mains was caused by the defendant's construction of the sewers in evidence, . . . yet as

against this testimony of the plaintiff's witnesses, . . . there is the positive testimony given for defendant by the engineer in charge of the work for the commissioners that the refill of the ditch was properly made by the defendant, and that a thorough tamping or ramming of it was had . . .

*Louisville Gas & Elec. Co.*, 250 Ky. at 331–332. The court thus affirmed the trial court, holding that the question of whether the gas pipes were damaged by the contractor was properly for the fact finder. In this case, the trial court found upon substantial evidence that Tyee exercised reasonable care, and that finding will not be disturbed on appeal.

■ The Gas Company also raises the issue of trespass. It cites *Illinois Bell Tel. Co. v. Charles Ind Co.*, 3 Ill. App. 2d 258, 121 N.E.2d 600 (1954), where the court held that a contractor's permit to put in storm sewers did not give the contractor the right to interfere with a telephone company's underground cable and that the contractor committed a trespass when its trench hoe struck and damaged the cable. But in the instant case, the trial court concluded that plaintiff failed to meet its burden of proof that Tyee trespassed upon plaintiff's gas lines. To prevail under a trespass theory, the Gas Company must show more than just damage to its lines. It must show that some act by Tyee caused the damage. The Gas Company is unable to overcome this initial hurdle.

Even assuming arguendo that the Gas Company had established that it was an act of Tyee that caused the damage, it would still have to be shown that Tyee acted intentionally. There is no question that Tyee intended to dig the necessary ditches and lay the power lines. But the intent necessary to find a trespass is the intent to cause the damage or to intermeddle with the lines. *See General Tel. Co. v. Bi–Co Pavers, Inc.*, 514 S.W.2d 168, 73 A.L.R.3d 978 (Tex. Civ. App. 1974); W. Prosser, *Handbook of the Law of Torts* § 14 (4th ed. 1971); 1 F. Harper & F. James, *The Law*

*of Torts* § 2.5 (1956). The Gas Company presented no such evidence.

Given our disposition of the case, we need not address the other issues raised.

Affirmed.

RINGOLD and DURHAM–DIVELBISS, JJ., concur.

Reconsideration denied June 24, 1980.

Review denied by Supreme Court September 19, 1980.